Omid A. Mantashi (SBN 208226)
**Law Offices of Omid A. Mantashi**
360 Grand Avenue, Ste. 90
Oakland, California  94610
Telephone:  (510) 593-9442
Facsimile:  (510) 868-8310
omid@california.com

Timothy L. Boller (*pro hac vice*)
William O. Ferron, Jr. (*pro hac vice*)
**SEED IP LAW GROUP PLLC**
701 5TH Avenue, Suite 5400
Seattle, WA 98104
Telephone: 206.622.4900
Facsimile: 206.682.6031

Email: TimB@seedip.com
        BillF@seedip.com

Attorneys for Defendant
NewPath Networks, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NextG Networks, Inc., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> NewPath Networks, LLC, a New Jersey limited liability corporation, <br> Defendant. | No. C 08-1565 VRW <br><br> **DEFENDANT NEWPATH NETWORKS, LLC'S OPPOSITION TO PLAINTIFF NEXTG NETWORKS, INC.' S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION TO DISMISS COUNTERCLAIMS** <br><br> Date:  September 11, 2008 <br> Time:  2:30 p.m. <br> Judge:  Honorable Vaughn R. Walker |

# TABLE OF CONTENTS

I.     Introduction and Summary of Argument ........................................................................1

II.    Pertinent Facts..................................................................................................................2

       A.     During Prosecution the Patentee Expressly Disclaimed: Antenna Systems
              Which Provide the Same Signal to All Antennas Coupled to an Optical
              Network; Antenna Systems Without a Matrix Switch; Antenna Systems
              Receiving a Single RF Signal;  Antenna Systems Employing Digital Signals;
              and Baseband Switching ................................................................................. 3

       B.     NextG Knew That NewPath's Systems Do Not Infringe the Patent-in-Suit and
              Brought This Lawsuit in Bad Faith With an Intent to Interfere With
              NewPath's Business ........................................................................................ 5

III.   NextG's Motion to Dismiss NewPath's Inequitable Conduct Defense and
       Counterclaim Should Be Denied Because NewPath Has Not Raised a Defense or
       Brought a Counterclaim Based on Inequitable Conduct Before the Patent and
       Trademark Office..............................................................................................................8

IV.    There Is No Shield to the Filing of an Objectively Baseless Infringement Lawsuit ........10

V.     NewPath's Allegations of Fraud Are Sufficiently Specific Under Rule 9(b)....................11

VI.    NewPath Has Sufficiently Pled and Established a Prima Facie Case for Its
       Counterclaims ..................................................................................................................12

       A.     NewPath Has Sufficiently Alleged and Established a *Prima Facie* Case of
              Patent Misuse ................................................................................................ 12

       B.     NewPath Has Sufficiently Alleged and Established a Prima Facie Case of
              Tortious Interference With a Contractual Relationship in Violation of
              Washington Law ............................................................................................ 14

       C.     NewPath Has Sufficiently Alleged and Established a Prima Facie Case of
              Negligent Interference With a Business Expectancy in Violation of California
              Law, and of Unfair Competition Under California Law.................................... 15

VII.   NewPath Is Entitled to Discovery Before Its Counterclaims Are Dismissed....................16

VIII.  Conclusion ......................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066 (Fed. Cir. 2002)......................11

*Aventis Pharma S.A. v. Amphastar Pharmaceuticals, Inc.*, 525 F.3d 1334 (Fed. Cir. 2008) ...............................................................................................................11

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....................................................1

*Brown v. Safeway Stores, Inc.*, 94 Wash 2d 359, 617 P.2d 704 (Wash. 1980) (en banc).....10, 11, 15

*Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028 (C.D. Cal. 2007).....2, 10, 12, 13, 15, 16, 17

*Chimie v. PPG Indus., Inc.*, 402 F.3d 1371 (Fed. Cir. 2005) .........................................13

*Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash. 2d 120, 839 P.2d 314 (1992).........14, 15

*Cybor Corp. v. FAS Techns., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc) .................12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) .......................13

*Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...............................14

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998)...........................13

*Honeywell Int'l Inc. v. ITT Industries, Inc.*, 452 F.3d 1312 (Fed. Cir. 2006) ....................13

*Hydril Co. LP v. Prideco LP*, 474 F.3d 1344 (Fed. Cir. 2007)..........................................11

*In re Independent Service Organizations Antitrust Litigation*, 964 F. Supp. 1479 (D. Kan 1997) ....................................................................................................10, 14

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 598 P.2d 60 (Cal. 1979).............................15, 16

*Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327 (Fed. Cir. 2008) .....................................13

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1996) (en banc), *aff'd* 517 U.S. 370 (1996).......................................................................................12, 13

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)...................................2, 17

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) ...................................11

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................13

*Springs Window Fashions v. Novo Industries*, 323 F.3d 989 (Fed. Cir. 2003) ......................13

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).............................13

*Wright v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000).............................................11

*Zenith Electronics Corp. v. Elgo Touchsystems, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999) ...................10

**STATUTES**

35 USC Section 271 ........................................................................................................10

35 USC Section 271(d)(3) ..............................................................................................10

Cal. Code Civ. Proc. 425.17(c) ...................................................................................2, 16

**RULES**

Federal Rules of Civil Procedure 9(b) ............................................................................11

I.    Introduction and Summary of Argument

Defendant NewPath Networks, LLC ("NewPath") hereby submits its opposition to Plaintiff NextG Networks LLC's Motion to Strike Affirmative Defenses and Motion to Dismiss Counterclaims.

NextG filed a bare-bones and conclusory Complaint making vague allegations of infringement of U.S. Patent No. 5,682,256 (the "patent-in-suit"). NextG's Complaint does not identify which NewPath systems allegedly infringe the patent-in-suit or which claims are allegedly infringed, and thus does not satisfy the requirements of *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). NewPath has repeatedly asked NextG to identify the accused systems and the claims allegedly infringed. NextG has repeatedly refused to do so, despite having initially agreed to provide its infringement contentions and documents on or before July 13, 2008. NextG now takes the position that it is not required to ***even identify what systems are accused of infringement*** until after the Court holds a hearing on NextG's Motion to Dismiss. In fact, NextG has not even answered NewPath's Counterclaims for declaratory judgment of non-infringement and invalidity, and did not seek to dismiss or strike those counterclaims. Boller Decl., ¶¶ 2, 3, 7, 8.

Incredible, the thrust of NextG's argument is that NewPath has not been specific enough in its allegations of patent misuse, intentional interference, negligent interference and unfair competition. NewPath filed a very detailed Answer and Counterclaims with specific factual allegations, despite having to guess which systems NextG accused of infringement and what claims of the patent-in-suit NewPath allegedly infringed. NextG's purpose in bringing the Motion to Strike and to Dismiss is to postpone the inevitable determinations that there is no infringement and that NextG's allegations of infringement were objectively baseless, all so that NextG can continue to improperly disrupt NewPath's business for as long as possible. As established below, NewPath has sufficiently pled its affirmative defenses and counterclaims. To the extent the Court determines that some portion of the Answer and Counterclaims should be clarified, NewPath respectfully seeks leave to amend.

With regard to NextG's motion to dismiss under California's anti-SLAPP statute, the nature of NextG's false statements, namely false statements about a competitor's goods and services, is

expressly excluded from coverage under the statute. *See* Cal. Code Civ. Proc. 425.17(c). In any event, NewPath has established a *prima facie* case that NextG's infringement allegations are objectively baseless and were brought in a bad-faith in order to disrupt NewPath's business, and that in fact NewPath's business was disrupted and a contract terminated because of NextG's false allegations of infringement. NewPath's showing is sufficient to avoid dismissal under the anti-SLAPP statute.

To the extent the Court determines the anti-SLAPP statute is applicable, and determines that NewPath has not made a *prima facie* showing, NewPath requests a continuance until the discovery contemplated by the Patent Local Rules is complete, and is concurrently filing a motion requesting such a continuance. NewPath is entitled to discovery regarding the basis for NextG's claims of infringement before the Court dismisses its claims pursuant to California's anti-SLAPP statute. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001); *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1040 (C.D. Cal. 2007) ("The extent to which the infringement litigation may constitute a sham based on objectively unreasonable claim construction arguments is more properly decided after the claim construction hearing."). Here, NewPath has requested discovery from NextG regarding NextG's infringement contentions; NextG's knowledge of NewPath's equipment; and NextG's communications with third parties regarding NewPath, including information and documents uniquely under NextG's control and the control of NextG's predecessors-in-interest, and NextG has refused to provide its infringement contentions and documents required by the Patent Local Rules until *after* the hearing on the anti-Slapp motion. *See* Boller Decl., ¶¶ 4, 5, Exhibit A.

Under such circumstances, NextG's Motion to Strike and to Dismiss should be denied.

II.    Pertinent Facts

NewPath and NextG are competitors in the field of providing services related to antenna systems. Kavanagh Decl., ¶ 3; McLernon Decl., ¶ 4; NewPath's Answer and Counterclaims at 6, ¶ 7. NextG filed this lawsuit on March 21, 2008. Complaint. The lawsuit alleges infringement of U.S. Patent No. 5,682,256 by NewPath, but does not accuse any specific acts of infringement and does not identify which claims are allegedly infringed by NewPath's acts or systems. *Id.*

On April 11, 2008 and April 14, 2008, NewPath asked NextG to identify the equipment in NewPath's systems that NextG contended was infringing. Boller Decl., ¶ 3. NewPath served document requests on NextG directed to NextG's infringement contentions, to communications between NextG and third parties regarding NewPath, to NextG's enforcement efforts, to NextG's acquisition of the patent-in-suit, and to the products used in NewPath's systems. Boller Decl., ¶ 5, Exhibit A (NextG's responses to NewPath's Request for Production Nos. 18-25, 28, 29, 32-43, and 48.) Such documents would normally be in NextG's custody and under NextG's control. This also the type of information and documents NextG must produce under the Patent Local Rules. See Patent Local Rule 3.1 and 3.2. To date, NextG has not identified the systems which allegedly infringe the patent-in-suit or the claims which are allegedly infringed. Boller Decl., ¶ 6. In addition, NextG has not produced any documents in response to NewPath's discovery requests, other than an apparently incomplete file history for the patent-in-suit. Boller Decl., ¶ 5.

A.   During Prosecution the Patentee Expressly Disclaimed: Antenna Systems Which Provide the Same Signal to All Antennas Coupled to an Optical Network; Antenna Systems Without a Matrix Switch; Antenna Systems Receiving a Single RF Signal; Antenna Systems Employing Digital Signals; and Baseband Switching

In an amendment mailed on or about February 25, 1993, the patentees' representative expressly disclaimed systems that use audio or digital signals on the optical network, as opposed to RF signals on the optical network. Barrett Decl., ¶ 5, Exhibit D at 3-5 ("radio frequency carrier signals exist both in air link extending away from the fixed radio ports … and in the reverse direction within an optical fiber network.") (emphasis in original).

In an amendment mailed on or about September 14, 1995, the patentees' representative amended the independent claims 1, 2, 13 and 14 to recite "a plurality" of RF transceivers. The representative rewrote dependent claim 6 as an independent claim that recites "a plurality" of radio transceivers. Barrett Decl., ¶ 2, Exhibit A, pages 1-6. The issued claims all recite a plurality of RF transceivers or similar language. Claims 1-5, 7-13 and 16-20 recite "a plurality of independently operated radio frequency (RF) transceivers." Claim 6 recites "a plurality of radio transceiver." Claim 14 recites "a plurality of independently operated RF transceivers." Claim 15 recites "trunked RF communication channels." Barrett Decl., ¶ 4, Exhibit C at 10, 11. Thus, the claims exclude systems with a single RF signal.

In the amendment mailed on or about September 14, 1995, the patentees' representative distinguished systems comprising multiple independent networks from the claimed invention, which "involves interconnecting all transceivers and ports." Barrett Decl., ¶ 2, Exhibit A at 9. In the amendment mailed on or about September 14, 1995, the patentees' representative distinguished baseband switching from "switching [that] takes place between the transceivers and radio ports." Barrett Decl., ¶ 2, Exhibit A at 11-12.

In the amendment mailed on or about January 29, 1996, the patentees' representative amended independent claims 1, 2, 13 and 14 to recite a plurality of "independently operated" RF transceivers, and amended independent claims 1, 2, 13, 14 and 15 to recite that the fiber optic network "selectively" interconnects the RF transceivers and fixed radio ports. Barrett Decl., ¶ 3, Exhibit B at 1-6. In the amendment, the patentees' representative stated (emphasis in original):

> What is *not* shown is a network having a number of RF transceivers and a number of antennas which can be interconnected. All that Powell shows is two networks, each having a single RF transceiver permanently connected to a number of antenna sites. . . .
>
> The Examiner hypothesizes that Powell's system could be extended by having a plurality of transceivers interconnected with the antenna sites. However, there is no suggestion in the prior art that this might be done. It is noted in particular that in Powell's branched network all the antenna sites are necessarily transmitting/receiving the same signals, since they are being used to enlarge the size of a single cell. There is no need for more than one transceiver to be connected to them. Simply pluralizing Powell's system would simply produce several topologically separate branched networks, each having a single transceiver. Alternatively, adding a second transceiver to a single branched network of the Powell type, as the Examiner suggests, would not achieve a useful result as each antenna would transmit the output of all the transceivers.

Barrett Decl., ¶ 3, Exhibit B at 10-11. Thus, the patentee expressly disclaimed separate systems and systems were each antenna transmits the output of all the transceivers.

In the amendment mailed on or about January 29, 1996, the putative inventors' representative further stated:

> In contrast [to a combination of the cited references], the present invention consist of migrating all the RF transceivers to a central station, and selectively interconnecting the radio ports (antenna sites) with the transceivers, by means of an optical fibre network.

Barrett Decl., ¶ 3, Exhibit B at 13.  Thus, the patentee defined the invention as requiring the selective interconnecting of the RF transceivers to the radio ports.

All of the claims as issued recite the "selective interconnecting" or the "matrix switch." Claims 1-5, 7-12 and 16-20 recite "selectively interconnecting the RF transceivers and the fixed radio ports."  Claims 2-5 and 16-20 also recite "a matrix switch."  Claim 6 recites "a matrix switch for selectively interconnecting the transceivers and radio ports."  Claim 13 recites "a base centre having a plurality of [RF transceivers]" and "an optical network selectively connecting said base centre with each of said remote communications ports."  Claim 14 recites "a plurality of trunked RF communications channels" and "an optical network selectively connecting said base centre location to said fixed remote communications ports."  Claim 15 recites, "an optical fiber network selectively interconnecting said base station and its trunked communications channels with said fixed RF communications ports."  Barrett Decl., ¶ 4, Exhibit C at 10-11.

> **B.      NextG Knew That NewPath's Systems Do Not Infringe the Patent-in-Suit and Brought This Lawsuit in Bad Faith With an Intent to Interfere With NewPath's Business**

NextG has to have known for several years that NewPath is a competitor of NextG.  For example, NextG and NewPath attend the same trade shows and advertise in the same publications.  As a competitor to NewPath, NextG would be familiar with the equipment NewPath uses in its antenna systems and the characteristics of that equipment.  Further, the equipment at most of NewPath's sites is readily visible to the public, and NextG frequently has it own equipment positioned nearby.  Kavanagh Decl., ¶¶ 4-6; McLernon Decl., ¶¶ 5-7; Answer and Counterclaims at 6, ¶¶ 8-9.

NewPath obtains the optical signal equipment used in its antenna systems from only three equipment suppliers: ADC Telecommunications Sales, Inc ("ADC"), Andrew Corporation ("Andrew"), and Powerwave Technologies, Inc. ("Powerwave").  Approximately half of NewPath's antenna systems are digital, and do not transmit even a single radio frequency ("RF") signal on an optical network.  None of NewPath's systems are configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.  All of NewPath's antenna systems provide the same signal to all repeater antennas coupled to an optical network.

1    None of NewPath's antenna systems had or has a matrix switch. Kavanagh Decl., ¶¶ 7-11;

2    McLernon Decl., ¶¶ 8-12; Answer and Counterclaims at 7-8, ¶¶ 13, 16, 19, 22, 25.

3         NewPath obtains off-the-shelf equipment from ADC that is installed in approximately half of

4    its antenna systems ("the ADC Equipment"). NextG uses the same ADC Equipment in some of its

5    antenna systems. To use the ADC Equipment in its antenna systems, NextG would necessarily need

6    to be aware of the characteristics of that equipment. The ADC Equipment is not configured to

7    transmit radio frequency ("RF") signals on an optical network. NewPath's ADC Equipment cannot

8    be configured to transmit RF signals on an optical network without substantial modification.

9    NewPath had not modified its ADC equipment to transmit RF signals on an optical network and

10   there is no motivation to do so. NewPath's ADC Equipment is not configured to selectively

11   interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

12   NewPath's ADC Equipment cannot be configured to selectively interconnect a plurality of received

13   RF signals with a plurality of radio ports via an optical network without substantial modification,

14   and there is no motivation to do so. The ADC Equipment used by NewPath does not have a matrix

15   switch, and there is no motivation for NewPath to modify the ADC Equipment to incorporate a

16   matrix switch. The ADC Equipment used by NewPath did not and does not infringe any claim of

17   the patent-in-suit at least because the ADC Equipment: is digital; does not selectively interconnect a

18   plurality of independent RF signals with a plurality of fixed radio ports via an optical network; and

19   does not have a matrix switch. Kavanagh Decl., ¶¶ 12-25; McLernon Decl., ¶¶ 13-26; Answer and

20   Counterclaims at 8-9, ¶¶ 26-43.

21         NewPath obtains off-the-shelf equipment from Andrew that is installed in some of its

22   antenna systems ("the Andrew Equipment"). NextG uses the same Andrew Equipment in most of its

23   antenna systems. To use the Andrew Equipment in its antenna systems, NextG would necessarily

24   need to be aware of the characteristics of that equipment. NewPath's Andrew Equipment is not

25   configured to selectively interconnect a plurality of received RF signals with a plurality of radio

26   ports via an optical network. NewPath's Andrew Equipment cannot be configured to selectively

27   interconnect a plurality of received RF signals with a plurality of radio ports via an optical network

28   without substantial modification. NewPath's Andrew Equipment has not been modified to

selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network, and there is no motivation to do so. The Andrew Equipment used by NewPath does not have a matrix switch, and there is no motivation for NewPath to modify the Andrew Equipment to incorporate a matrix switch. The Andrew Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the Andrew Equipment: does not selectively interconnect a plurality of independent RF signals with a plurality of fixed radio ports via an optical network; and does not have a matrix switch. Kavanagh Decl., ¶¶ 26-37; McLernon Decl., ¶¶ 27-38; Answer and Counterclaims at 9-10, ¶¶ 44-56.

NewPath obtains off-the-shelf equipment from Powerwave that is installed in some of its antenna systems ("the Powerwave Equipment"). NextG uses the same Powerwave Equipment in some of its antenna systems. To use the Powerwave Equipment in its antenna systems, NextG would necessarily need to be aware of the characteristics of that equipment. NewPath's Powerwave Equipment is not configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network. NewPath's Powerwave Equipment cannot be configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network without substantial modification. The Powerwave Equipment used by NewPath had not been modified to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network, and there is no motivation to so modify the Powerwave Equipment. The Powerwave Equipment used by NewPath does not have a matrix switch, and there is no motivation to add such a switch to the Powerwave Equipment. The Powerwave Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the Powerwave Equipment: does not selectively interconnect a plurality of independent RF signals with a plurality of fixed radio ports via an optical network; and does not have a matrix switch. Kavanagh Decl., ¶¶ 38-49; McLernon Decl., ¶¶ 39-49; Answer and Counterclaims at 10-11, ¶¶ 57-69.

All of NewPath's outdoor antenna systems receive a single RF signal for a single cell. Only one of NewPath's systems receives more than one RF signal, and in that system all of the antennas

transmit all of the RF signals; there is no selective interconnecting.  Kavanagh Decl., ¶¶ 50-51; McLernon Decl., ¶¶ 50-51; Answer and Counterclaims at 13, ¶¶ 88, 90.

NextG filed the Complaint shortly after losing to NewPath in a competitive bid process for a substantial contract to provide antenna system related services, which was also within days before the industry's largest annual meeting.  Kavanagh Decl., ¶¶ 52-53; Answer and Counterclaims at 13-14, ¶¶ 91-92.  NewPath had a supplier agreement with Andrew, and continuation of that supplier agreement would have benefited NewPath.  NextG, as a competitor of NewPath, would have been aware of NewPath's business relationship with Andrew.  Andrew terminated the business relationship with NewPath shortly after learning of NextG's baseless allegations of infringement.  NewPath has been damaged by the termination of the business relationship with Andrew and has incurred additional expenses associated with sourcing equipment for use in NewPath's antenna systems.  Kavanagh Decl., ¶¶ 54-55, 58-59; Answer and Counterclaims at 16, ¶¶ 111-115.

For the past few years, customers and potential customers of NewPath have stated that NextG represented to them that NextG had a patent on distributed antenna systems and were the only ones who could provide that type of service.  NextG falsely told potential customers of NewPath at the CTIA trade show in April of 2008 that NewPath infringed the patent-in-suit and advised such customers that NewPath had been served with a lawsuit.  Kavanagh Decl., ¶¶ 56-57.

III.    **NextG's Motion to Dismiss NewPath's Inequitable Conduct Defense and Counterclaim Should Be Denied Because NewPath Has Not Raised a Defense or Brought a Counterclaim Based on Inequitable Conduct Before the Patent and Trademark Office**

NextG's Motion to Dismiss NewPath's inequitable conduct defense and counterclaim is disingenuous.  NextG pretends that NewPath has alleged inequitable conduct before the Patent and Trademark Office during prosecution of the patent-in-suit.  Motion to Dismiss at 4-9.  NewPath, however, has not alleged inequitable conduct before the Patent and Trademark Office.  NextG set up a straw man so that NextG can knock it down.  NextG points to paragraph 119 of the Answer and Counterclaims, but fails to provide the Court with the exact language used in paragraph 119, which is a general statement that NextG is not entitled to relief under equitable principals.  Paragraph 119 reads as follows:

119.   Plaintiff's claims are barred in whole or part by: a. the statute of limitations; or b. the doctrines and principals of waiver, estoppel, unclean hands, inequitable conduct and laches.

Answer and Counterclaims at 16, ¶ 119.  This is not and was not intended to be a specific allegation of inequitable conduct before the Patent and Trademark Office.  In seeking to strike an inequitable conduct defense which NewPath has not yet raised, NextG conveniently ignores paragraph 129 of the Answer, where the specific basis for NewPath's defense of unenforceability (misuse) is set forth. NextG is aware of paragraph 129, because it sites to it elsewhere in its brief.  See NextG's Motion at 9:24-28.).

Moreover, NewPath has not brought a counterclaim based on inequitable conduct before the Patent and Trademark Office, as NextG falsely suggests in its brief.  See NextG's Motion to Dismiss at 3:10-15 and 4:21-24.  NewPath did bring a Counterclaim for a declaration that the patent-in-suit is unenforceable (which is discussed below), but this counterclaim expressly states it is based on ***patent misuse***, not based on inequitable conduct before the Patent and Trademark Office.  Answer and Counterclaims at 19, ¶ 143.  Accordingly, NextG's motion to strike and to dismiss an affirmative defenses and counterclaim which NewPath has not yet asserted should be denied.  NewPath notes that the paragraphs to which NextG points to as raising an inequitable conduct defense, see NextG's Motion at 5:1-9, pertain to the prosecution history for the '256 Patent and the knowledge of NextG's predecessors-in-interest and of NextG regarding documents that are part of that history.  As such, these documents and NextG's knowledge of these documents pertain to the objective reasonableness of NextG's infringement allegations and NextG's bad faith intent in bringing this lawsuit.

NewPath further notes that the documents and information pertinent to a defense of inequitable conduct before the Patent and Trademark Office are most likely in the procession of NextG and its predecessors-in-interest.  Accordingly, NewPath reserves the right to seek leave to amend the pleadings to raise a defense of inequitable conduct before the Patent and Trademark Office, should discovery show that NextG's predecessors-in-interest intentionally made a materially false representation or omission during prosecution of the patent-in-suit or of a related patent.

IV.    There Is No Shield to the Filing of an Objectively Baseless Infringement Lawsuit

NextG incorrectly argues that NewPath's patent misuse defense and request for declaratory judgment of unenforceability are barred by 35 USC Section 271(d)(3). NextG cites no case law for this proposition. This is understandable, given that the case law contradicts NextG's position. The courts have consistently held that the shield of Section 271 applies to good-faith enforcement of patent rights. Conversely, filing an objectively baseless lawsuit with intent to disrupt a competitor's business *does* give rise to a misuse defense and waives immunity to state and federal unfair competition claims (provided the other elements of those claims are satisfied). *See, e.g., Zenith Electronics Corp. v. Elgo Touchsystems, Inc.,* 182 F.3d 1340, 1352-1355 (Fed. Cir. 1999) (discussing cases and holding Lanham Act and state unfair competition claims were not barred by the patent laws or the antitrust laws when the patentee acted in bad faith); *In re Independent Service Organizations Antitrust Litigation,* 964 F. Supp. 1479, 1485 (D. Kan 1997) ("A patent holder's access to the courts is immunized unless his lawsuit is (1) objectively meritless and (2) brought in an attempt to directly interfere with the business of his competitor.") (holding, under the facts of that case, that there was no evidence the lawsuit was objectively baseless). NextG itself acknowledges that patent misuse provides a basis for refusing to enforce a patent, and that NewPath has alleged patent misuse. See NextG's Motion at 11:15-23. Accordingly, NewPath has alleged, and as discussed in more detail below, has established a *prima facie* case the NextG's infringement allegations in the Complaint and those made to NewPath's customers are both objectively baseless and brought in bad faith. Accordingly, NextG's motion to strike NewPath's misuse defense and to dismiss NewPath's declaratory judgment counterclaim of unenforceability should be denied.

Similarly, NextG incorrectly states the filing of a lawsuits is absolutely privileged under California and Washington State law. In addition to the sham litigation exception recognized for patent misuse, both California and Washington recognize exceptions to the privilege for sham litigation. *See Catch Curve, Inc. v. Venali, Inc.,* 519 F. Supp. 2d 1028, 1040 (C.D. Cal. 2007) (sham litigation is not protected by U.S. or California Constitutions, and under such circumstances, anti-SLAPP motion to dismiss tortious interference claims will fail); *See Brown v. Safeway Stores, Inc.,*

94 Wash 2d 359, 617 P.2d 704 (Wash. 1980) (en banc) (One who in good faith asserts a legally protected interest is not liable for tortious interference.).

V.    NewPath's Allegations of Fraud Are Sufficiently Specific Under Rule 9(b)

NextG alleges that the allegations of "fraudulent" conduct in paragraphs 162 and 165 of NewPath's counterclaims are insufficiently specific to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) is satisfied when the allegations of fraud are sufficient to allow the accused party to prepare an answer and the defense is not hampered by the failure to allege specific details. *Odom v. Microsoft Corp.*, 486 F.3d 541, 554-555 (9th Cir. 2007) (en banc) (defense not hampered by failure to name particular employee who allegedly committed fraudulent act). *See also Hydril Co. LP v. Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007) (*Walker-Process* claim should not be dismissed for failure to allege specific enforcement details at the early stages of a case).  Moreover, allegations of scienter may be generally alleged. *Odom*, 486 F.3d at 554.  In addition, knowledge and intent may be inferred from the circumstances. *Aventis Pharma S.A. v. Amphastar Pharmaceuticals, Inc.*, 525 F.3d 1334, 1343-44 (Fed. Cir. 2008) ("Given that direct evidence is often unavailable, intent is generally inferred from surrounding facts and circumstances."); *Wright v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000).

Here, NextG is the owner of record of the patent-in-suit and has accused NewPath of infringing the patent-in-suit.  It is reasonable to infer that NextG would be familiar with the claims and prosecution history of the patent-in-suit before filing the lawsuit, and it is reasonable to infer NextG would have familiarized itself with NewPath's products. *See Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002) (infringement allegations must be "based on some actual evidence uncovered during the prefiling investigation that each claim limitation reads on the accused device either literally or under the doctrine of equivalents.").  It is also reasonable to infer that NextG would be familiar with the products of a competitor in general.

Moreover, the Answer and Counterclaims provide NextG with a sufficient specificity to prepare a defense.  NewPath alleged that NextG filed the present lawsuit with knowledge that the claims of the patent-in-suit could not be construed to cover any of NewPath's systems, and with the improper purpose of interfering with NewPath's business and existing and potential business

relationships. Answer and Counterclaims at 5, ¶ 1. In paragraphs 13 to 69, 88-90 and 93-106 of the Answer and Counterclaims, NewPath identified all of the equipment suppliers from whom NewPath obtains its optical equipment, specific reasons why that equipment cannot infringe the claims of the patent in suit (the use of digital signals as opposed to RF signals; the absence of matrix switches; the absence of selective interconnecting of a plurality of RF signals with a plurality of radio ports via an optical network), and alleged NextG had knowledge that those features were not found in NewPath's systems. In paragraphs 70-87, NewPath identified specific portions of the prosecution history and alleged NextG was aware of content of the prosecution history and the content of the claims of the patent-in-suit. In paragraph 109, NewPath alleged that NextG's infringement allegations were objectively baseless and brought in bad faith. Thus, NextG knows that the statements which are alleged to be false are NextG's infringement allegations, and that the Complaint (with NextG's false allegations of infringement) was filed in order to disrupt NewPath's business. To the extent the Court believes additional allegations are necessary to show fraud in the context of a particular claim, NewPath is prepared to amend the Answer and Counterclaims to further allege that for the past few years, customers and potential customers of NewPath have stated that NextG represented to them that NextG had a patent on distributed antenna systems and were the only ones who could provide that type of service; and to allege that NextG falsely told potential customers of NewPath at the CTIA trade show in April of 2008 that NewPath infringed the patent-in-suit and advised such customers that NewPath had been served with a lawsuit. See Kavanagh Decl., ¶¶ 56-57. Whether the other allegations pertaining to NextG's false statements that NewPath infringes the patent-in-suit are sufficient for the particular counterclaims at issue is addressed below.

VI.    NewPath Has Sufficiently Pled and Established a Prima Facie Case for Its Counterclaims

A.    NewPath Has Sufficiently Alleged and Established a *Prima Facie* Case of Patent Misuse

Claim construction is a matter of law for the court. *Cybor Corp. v. FAS Techns., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Claim construction is the first step in a two step process for determining infringement and validity. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1996) (en banc), *aff'd* 517 U.S. 370 (1996). Thus, claim construction must be considered when determining whether infringement claims are objectively baseless. *See Catch*

*Curve*, 519 F. Supp. 2d at 1040 (declining to rule on anti-SLAPP motion prior to claim construction ruling.)

Claim construction begins with the language of the claims. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Words in a claim are generally given their ordinary and customary meaning to a person of ordinary skill in the art at the time the patent application was filed. *Phillips*, 415 F.3d at 1313. The person of ordinary skill views the claim term in the light of the entire intrinsic record consisting of the claims, the specification and the prosecution (or file) history. *Phillips*, 415 F.3d at 1313-1317. Each claim term is presumed to have a meaning and an interpretation generally should not render a claim term superfluous. *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1331 (Fed. Cir. 2008).

The specification is "the single best guide to the meaning of a disputed term," that "[u]sually, it is dispositive." *Phillips*, 415 F.3d at 1315 (discussing case law and citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The court "should also consider the patent's prosecution history, if it is in evidence." *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002) (discussing prosecution history estoppel). "The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent." *Springs Window Fashions v. Novo Industries*, 323 F.3d 989, 995 (Fed. Cir. 2003). *See also Honeywell Int'l Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1319-20 (Fed. Cir. 2006). "Such a use of the prosecution history ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (holding arguments made to obtain allowance of process claims limited scope of product claims as well). *See also Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998) (unambiguous argument that "tray units" are not "consoles" as claimed controls claim interpretation of meaning of consoles "regardless of that term's ordinary meaning or the way in

which Gentry now urges us to interpret it"; argument that reference also was distinguished on other grounds is not relevant).

Here, as set forth in Section II(A) above, the language of the claims and the prosecution history establish that the claims (1) do not cover systems that transmit the same signal to all antennas coupled to the optical network; (2) do not cover systems that receive a single RF signal; (3) do not cover digital systems; and (4) require selectively interconnecting a plurality of RF transceivers with a plurality of antennas over an optical network (5) using a matrix switch. As set forth in Section II(B) above, None of NewPath's systems can infringe the patent-in-suit because (1) NewPath's systems do not selectively interconnect a plurality of RF transceivers with a plurality of antennas over an optical network; (2) NewPath's systems do not have a matrix switch; (3) NewPath's systems transmit the same signal to all antennas coupled to the optical networks, and thus were expressly disclaimed. Further, NewPaths digital systems do not infringe for the additional reason that they are digital systems. Finally, all of NewPath's outdoor systems do not infringe for the additional reason that only one RF signal is transmitted over the optical network. NewPath has also alleged and pointed to evidence from which NextG's intent to interfere with NewPath's business can be inferred. *See In re Independent Service Organizations*, 964 F. Supp. at 1485 (elements of misuse are that the patent lawsuit is (1) objectively meritless and (2) brought in an attempt to directly interfere with the business of his competitor). Accordingly, NewPath has established a *prima facie* case that NextG's infringement allegations are objectively baseless. *See Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005) (establishing a probability of success may be shown by establishing claim is legally sufficient and supported by *prima facie* evidence capable of sustaining a favorable judgment).

B.     NewPath Has Sufficiently Alleged and Established a Prima Facie Case of Tortious Interference With a Contractual Relationship in Violation of Washington Law

Washington recognizes a cause of action for tortious interference with a contractual relationship arising out of sham litigation. The elements of the cause of action are: i) the existence of a contract or business expectance; ii) knowledge by the defendant of the contract or expectancy; iii) intentional interference inducing a breach or termination; iv) for an improper purpose or using improper means; and v) damages. *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wash. 2d 120,

137, 839 P.2d 314 (1992). Here, NewPath has alleged and submitted evidence of i) the existence of a contract or business relationship (NewPath's business relationship with Andrew); ii) NextG's knowledge that NewPath's obtained equipment from Andrew; iii) intentional interference (NextG knew Andrew would likely learn of the litigation and Andrew terminated the business relationship shortly after NextG filed the lawsuit); iv) for the improper purpose of interfering with NewPath's business relationships and using improper means (sham litigation); v) damages (NewPath has incurred additional expenses associated with obtaining equipment). See Section II (B) above; Kavanagh Decl., ¶¶ 54-55, 58-59. NextG only really disputes that a lawsuit can serve as the improper means under Washington law. Washington imposes a good faith requirement on the privilege, thus filing a groundless lawsuit may constitute "improper means" sufficient to give rise to a tortious interference claim. *See Brown v. Safeway Stores, Inc.*, 94 Wash 2d 359, 617 P.2d 704 (Wash. 1980) (en banc) (One who in good faith asserts a legally protected interest is not liable for tortious interference.)

      C.      NewPath Has Sufficiently Alleged and Established a Prima Facie Case of Negligent Interference With a Business Expectancy in Violation of California Law, and of Unfair Competition Under California Law

NextG does not dispute that NewPath has alleged a relationship with Andrew (See Kavanagh Decl., ¶ 54 for supporting evidence); knowledge of that relationship (see Kavanagh Decl., ¶ 55 for support evidence); that NextG acted to disrupt that relationship (which can be inferred from NextG's knowledge of the relationship and of the baselessness of the allegations); and damages proximately caused by NextG's conduct (the termination and the loss of customers). See Kavanagh Decl., ¶¶ 58-59.

NextG first argues it conduct is absolutely privileged under California law. As noted above, NextG is incorrect. *See Catch Curve*, 519 F. Supp. 2d at 1040. It also ignores NextG's false statements to potential customers at the April 2008 trade show. NextG then incorrectly argues that there can be no duty of care owned to a competitor. NextG points to the correct case, but mischaracterizes the holding. The California Supreme Court set forth the factors for determining when a duty of care arises: i) the extent to which the transaction was intended to affect the claimant; ii) the foreseeability of harm; iii) the degree of certainty that the plaintiff suffered injury; iv) the

1   closeness of the connection between the defendant's conduct and the injury suffered; v) the moral

2   blame attached to the defendant's conduct; and vi) the policy of preventing future harm. *J'Aire*

3   *Corp. v. Gregory*, 24 Cal. 3d 799, 598 P.2d 60, 63 (Cal. 1979). Each of these factors favors

4   imposition of a duty of care in this case. NextG intended the filing of the objectively baseless

5   Complaint and the knowingly false statements made to potential customers to affect NewPath, and

6   could foresee that NewPath would be damaged by the false allegations of infringement. Andrew

7   terminated its existing supply contract with NewPath when it learned of the allegations of

8   infringement. Patent misuse is so morally wrong as to strip the patentee of its statutory monopoly.

9   Finally, the policy of holding those who abuse their patent rights accountable for their actions

10  furthers the public policy of preventing future patent misuse. With regard to the anti-SLAPP

11  motion, NextG's misrepresentations to potential customers that NewPath's systems infringe NextG's

12  patent rights is subject to the exception of Cal. Code Civ. Proc. 425.17(c). NextG's statements were

13  i) representations about NewPath's services (that they infringe), ii) made for the purpose of

14  promoting NextG's competing services, iii) to potential customers of NewPath. In any event,

15  NewPath has made a *prima facie* showing that NextG's allegations of infringement were objectively

16  baseless and that NextG made such false statements to potential customers of NewPath. See Section

17  II (B) above, and Kavanagh Decl., ¶ 56-57. Establishing negligence interference with a business

18  expectancy and patent misuse is sufficient to establish unfair competition in violation of Section

19  17200 of the Business and Professional Code. *See Catch Curve*, 519 F. Supp. 2d at 1040 (declining

20  to dismiss Section 17200 claim where sham litigation claim remained in case). Accordingly,

21  NextG's Motion to dismiss NewPath's California claims for negligent interference with a business

22  expectancy and unfair competition should be denied.

23  VII.    NewPath Is Entitled to Discovery Before Its Counterclaims Are Dismissed

24          NewPath has repeatedly asked NextG to identify what systems are accused of infringement

25  and what claims were allegedly infringed. NextG has refused to do so. NewPath served document

26  requests on NextG directed to NextG's infringement contentions, to communications between NextG

27  and third parties regarding NewPath, to NextG's enforcement efforts, to NextG's acquisition of the

28  patent-in-suit, and to the products used in NewPath's systems. Boller Decl., ¶¶ 3-6, Exhibit A

(NextG's responses to NewPath's Request for Production Nos. 18-25, 28, 29, 32-43, and 48.)   Such documents would normally be in NextG's custody and under NextG's control.  This also the type of information and documents NextG must produce under the Patent Local Rules.  See Patent Local Rule 3.1 and 3.2.  To date, NextG has not identified the systems which allegedly infringe the patent-in-suit or the claims which are allegedly infringed.  Boller Decl., ¶ 6.  In addition, NextG has not produced any documents in response to NewPath's discovery requests, other than an apparently incomplete file history for the patent-in-suit.

To the extent the Court determines the anti-SLAPP statute is applicable, and determines that NewPath has not made a *prima facie* showing, NewPath requests a continuance until the discovery contemplated by the Patent Local Rules is complete, and is concurrently filing a motion requesting such a continuance.  NewPath is entitled to discovery regarding the basis for NextG's claims of infringement and the extent of NextG's misrepresentations to potential customers before the Court dismisses its claims pursuant to California's anti-SLAPP statute.  *See Metabolife*, 264 F.3d 832, 850 (9th Cir. 2001); *Catch Curve,*, 519 F. Supp. 2d 1028, 1040 (C.D. Cal. 2007) ("The extent to which the infringement litigation may constitute a sham based on objectively unreasonable claim construction arguments is more properly decided after the claim construction hearing.").  Here, NewPath has requested discovery from NextG regarding NextG's infringement contentions; NextG's knowledge of NewPath's equipment; and  NextG's communications with third parties regarding NewPath, including information and documents uniquely under NextG's control and the control of NextG's predecessors-in-interest, and NextG has refused to provide its infringement contentions and documents required by the Patent Local Rules the requested information and documents until ***after*** the hearing on the anti-Slapp motion.  *See* Boller Decl., ¶¶ 3-6, Exhibits A.  Under such circumstances, to the extent the Court does not deny NextG's Motion outright, the Court should postpone ruling on the motion until after the Court holds a claim construction ruling, and otherwise permit discovery in accordance with the Patent Local Rules and the discovery plan.  NewPath is concurrently filing a Motion for a Continuance.

VIII.    Conclusion

NextG has misused its patent and abused the litigation process by filing an objectively baseless Complaint alleging patent infringement. When confronted with a detailed Answer and Counterclaims setting forth specifically why NewPath's systems did not and, in view of the prosecution history and claims, could not infringe, NextG further abused the litigation process by refusing to identify the accused products and claims that were allegedly infringed, and by bringing a meritless anti-SLAPP motion. For all of the reasons set forth above, NewPath has not only demonstrated that it has adequately pled its challenged affirmative defenses and counterclaims, but has established a *prima facie* case for the challenged affirmative defenses and counterclaims. Accordingly, NextG's Motion to Strike and to Dismiss should be denied in its entirety.

Respectfully submitted,

SEED IP Law Group PLLC

Timothy L. Boller, WSBA # 29079
701 Fifth Avenue, Suite 5400
Seattle, Washington  98104
Telephone:  (206) 622-4900

Omid A. Mantashi (SBN 208226)
Law Offices of Omid A. Mantashi
360 Grand Avenue, Ste. 90
Oakland, California  94610
Telephone:  (510) 593-9442

Attorneys for Defendant
NEWPATH NETWORKS, LLC

1213303_1.DOC

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2008, a true and correct copy of the foregoing **DEFENDANT NEWPATH NETWORKS, LLC'S OPPOSITION TO PLAINTIFF NEXTG NETWORKS, INC.' S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION TO DISMISS COUNTERCLAIMS** was served on Plaintiff's counsel by electronic filing upon the following attorneys registered to receive service by email through the Northern District of California Electronic Case Filing System:

> Jeffrey Andrew Miller
> jmiller@orrick.com
> Jason Sheffield Angell
> jangell@orrick.com
> Orrick Herrington & Sutcliffe LLP
> 1000 Marsh Road
> Menlo Park, CA 94025

Attorneys for NextG Networks, Inc.

Jared Barrett

1213303_1.DOC

Omid A. Mantashi (SBN 208226)
**Law Offices of Omid A. Mantashi**
360 Grand Avenue, Ste. 90
Oakland, California  94610
Telephone:  (510) 593-9442
Facsimile:  (510) 868-8310
omid@california.com


Timothy L. Boller (*pro hac vice*)
William O. Ferron, Jr. (*pro hac vice*)
**SEED IP LAW GROUP PLLC**
701 5TH Avenue, Suite 5400
Seattle, WA 98104
Telephone: 206.622.4900
Facsimile: 206.682.6031

Email: TimB@seedip.com
         BillF@seedip.com

Attorneys for Defendant
NewPath Networks, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NextG Networks, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NewPath Networks, LLC, a New Jersey limited liability corporation,<br>Defendant. | No. C 08-1565 VRW<br><br>**[PROPOSED] ORDER DENYING PLAINTIFF NEXTG NETWORKS, INC.'S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date:  September 11, 2008<br>Time:  2:30 p.m.<br>Judge:  Honorable Vaughn R. Walker |

1    The Court, having considered the record, the submissions of the parties and the law, hereby

2    denies Plaintiff NextG Networks, Inc., Motion to Strike, Motion to Dismiss and Special Motion to

3    Strike in their entireties.

4    IT IS SO ORDERED

5

6    _____

7    Honorable Vaughn R. Walker

8

1215419_1.DOC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August, 2008, a true and correct copy of the foregoing **[PROPOSED] ORDER DENYING PLAINTIFF NEXTG NETWORKS, INC.' S MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION TO DISMISS COUNTERCLAIMS** was served on Plaintiff's counsel by electronic filing upon the following attorneys registered to receive service by email through the Northern District of California Electronic Case Filing System:

> Jeffrey Andrew Miller
> jmiller@orrick.com
> Jason Sheffield Angell
> jangell@orrick.com
> Orrick Herrington & Sutcliffe LLP
> 1000 Marsh Road
> Menlo Park, CA 94025
>
> Attorneys for NextG Networks, Inc.

Jared Barrett

1215419_1.DOC

[PROPOSED] ORDER DENYING PLAINTIFF' S
MOTION TO STRIKE AFFIRMATIVE DEFENSES
AND DISMISS COUNTERCLAIMS                                    CASE No. C 08-1565 VRW