Omid A. Mantashi (SBN 208226)
**Law Offices of Omid A. Mantashi**
360 Grand Avenue, Ste. 90
Oakland, California 94610
Telephone: (510) 593-9442
Facsimile: (510) 868-8310
omid@california.com

Timothy L. Boller (*pro hac vice*)
William O. Ferron, Jr. (*pro hac vice*)
**SEED IP LAW GROUP PLLC**
701 5TH Avenue, Suite 5400
Seattle, WA 98104
Telephone: 206.622.4900
Facsimile: 206.682.6031

Email: TimB@seedip.com
       BillF@seedip.com

Attorneys for Defendant
NewPath Networks, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NextG Networks, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NewPath Networks, LLC, a New Jersey limited liability corporation,<br>                    Defendant. | No. C 08-1565 VRW<br><br>**DECLARATION OF MIKE KAVANAGH REGARDING PLAINTIFF NEXTG NETWORKS, INC.'S PATENT MISUSE AND UNFAIR COMPETITION** |

I, Mike Kavanagh, hereby declare and state as follows:

1.  I am Chief Executive Officer for Defendant and Counterclaimant NewPath Networks LLC ("NewPath"). I make this declaration in support of NewPath's Opposition to NextG Networks, Inc.'s ("NextG") motion to strike and to dismiss certain defenses and counterclaims. The following facts are true of my own knowledge unless otherwise stated.

DECLARATION OF MIKE KAVANAGH                                           CASE NO. C 08-1565 VRW

2.      I have more than eighteen years of experience in the wireless industry.

3.      NewPath and NextG are competitors in the field of providing services related to antenna systems.

4.      NextG has to have known for several years that NewPath is a competitor of NextG. For example, NextG and NewPath attend the same trade shows and advertise in the same publications.

5.      As a competitor to NewPath, NextG would be familiar with the equipment NewPath uses in its antenna systems.

6.      The equipment at most of NewPath's sites is readily visible to the public, and NextG frequently has it own equipment positioned nearby.

7.      Most of NewPath's antenna systems are digital, and do not transmit even a single radio frequency ("RF") signal on an optical network.

8.      None of NewPath's systems are configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

9.      All of NewPath's antenna systems provide the same signal to all repeater antennas coupled to an optical network.

10.     None of NewPath's antenna systems had or has a matrix switch.

11.     NewPath obtains the optical signal equipment used in its antenna systems from only three equipment suppliers: ADC Telecommunications Sales, Inc ("ADC"), Andrew Corporation ("Andrew"), and Powerwave Technologies, Inc. ("Powerwave").

12.     NewPath obtains off-the-shelf equipment from ADC that is installed in most of its antenna systems ("the ADC Equipment"), and has used this ADC Equipment for several years.

13.     NextG uses the same ADC Equipment in some of its antenna systems, and has used this ADC Equipment for several years.

14.     To use the ADC Equipment in its antenna systems, NextG would necessarily need to be aware of the characteristics of that equipment.

15.     The ADC Equipment is not configured to transmit radio frequency ("RF") signals on an optical network.

DECLARATION OF MIKE KAVANAGH                     2                      CASE NO. C 08-1565 VRW

16. NewPath's ADC Equipment cannot be configured to transmit RF signals on an optical network without substantial and expensive modification.

17. NewPath had not modified its ADC equipment to transmit RF signals on an optical network.

18. There is no motivation for NewPath to modify the ADC equipment to transmit RF signals on an optical network.

19. NewPath's ADC Equipment is not configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

20. NewPath's ADC Equipment cannot be configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network without substantial and expensive modification.

21. The ADC Equipment used by NewPath does not have a matrix switch.

22. There is no motivation for NewPath to modify the ADC Equipment to incorporate a matrix switch.

23. The ADC Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the ADC Equipment is digital.

24. The ADC Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the ADC Equipment does not selectively interconnect a plurality of independent RF signals with a plurality of fixed radio ports via an optical network.

25. The ADC Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the ADC Equipment does not have a matrix switch.

26. NewPath obtains off-the-shelf equipment from Andrew that is installed in some of its antenna systems ("the Andrew Equipment"), and has used this Andrew Equipment for several years.

27. NextG uses the same Andrew Equipment in most of its antenna systems, and has used this Andrew Equipment for several years.

28. To use the Andrew Equipment in its antenna systems, NextG would necessarily need to be aware of the characteristics of that equipment.

DECLARATION OF MIKE KAVANAGH

3

CASE NO. C 08-1565 VRW

29. NewPath's Andrew Equipment is not configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

30. NewPath's Andrew Equipment cannot be configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network without substantial and expensive modification.

31. The Andrew Equipment used by NewPath had not been modified to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

32. There is no motivation for NewPath to modify the Andrew Equipment to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

33. NewPath would have had no motivation to modify the Andrew Equipment to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

34. The Andrew Equipment used by NewPath does not have a matrix switch.

35. There is no motivation for NewPath to modify the Andrew Equipment to incorporate a matrix switch.

36. The Andrew Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the Andrew Equipment does not selectively interconnect a plurality of independent RF signals with a plurality of fixed radio ports via an optical network.

37. The Andrew Equipment used by NewPath did not and does not infringe any claim of the '256 Patent at least because the Andrew Equipment does not have a matrix switch.

38. NewPath obtains off-the-shelf equipment from Powerwave that is installed in some of its antenna systems ("the Powerwave Equipment").

39. NextG uses the same Powerwave Equipment in some of its antenna systems, and has used this Powerwave Equipment for several years.

40. To use the Powerwave Equipment in its antenna systems, NextG would necessarily need to be aware of the characteristics of that equipment.

41. NewPath's Powerwave Equipment is not configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

42. NewPath's Powerwave Equipment cannot be configured to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network without substantial and expensive modification.

43. The Powerwave Equipment used by NewPath had not been modified to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

44. There is no motivation for NewPath to modify the Powerwave Equipment to selectively interconnect a plurality of received RF signals with a plurality of radio ports via an optical network.

45. The Powerwave Equipment used by NewPath does not have a matrix switch.

46. There is no motivation for NewPath to modify the Powerwave Equipment to incorporate a matrix switch.

47. The Powerwave Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the Powerwave Equipment does not selectively interconnect a plurality of independent RF signals with a plurality of fixed radio ports via an optical network.

48. The Powerwave Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the Powerwave Equipment does not selectively interconnect a plurality of independent RF signals with a plurality of fixed radio ports via an optical network.

49. The Powerwave Equipment used by NewPath did not and does not infringe any claim of the patent-in-suit at least because the Powerwave Equipment does not have a matrix switch.

50. All of NewPath's outdoor antenna systems receive a single RF signal for a single cell.

51. Only one of NewPath's systems receives more than one RF signal, and in that system all of the antennas transmit all of the RF signals; there is no selective interconnecting.

52. NextG filed the Complaint shortly after losing to NewPath in a competitive bid process for a substantial contract to provide antenna system related services.

53. NextG filed the Complaint within days before the industry's largest annual meeting.

54. NewPath had a supplier agreement with Andrew, and continuation of that supplier agreement would have benefited NewPath.

55. NextG, as a competitor of NewPath, would have been aware of NewPath's business relationship with Andrew.

56. For the past few years, customers and potential customers of NewPath have stated that NextG represented to them that NextG had a patent on distributed antenna systems and were the only ones who could provide that type of service.

57. NextG falsely told potential customers of NewPath at the CTIA trade show in April of 2008 that NewPath infringed the patent-in-suit and advised such customers that NewPath had been served with a lawsuit.

58. Andrew terminated the business relationship with NewPath upon learning of NextG's objectively baseless allegations of infringement.

59. NewPath has been damaged by the termination of the business relationship with Andrew and has incurred additional expenses associated with sourcing equipment for use in NewPath's antenna systems.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

DATED this 7th day of August, 2008, at Seattle, Washington.

_____
Mike Kavanagh

# CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2008, a true and correct copy of the foregoing **DECLARATION OF MIKE KAVANAGH REGARDING PLAINTIFF NEXTG NETWORKS, INC.'S PATENT MISUSE AND UNFAIR COMPETITION** was served on Plaintiff's counsel by electronic filing upon the following attorneys registered to receive service by email through the Northern District of California Electronic Case Filing System:

> Jeffrey Andrew Miller
> jmiller@orrick.com
> Jason Sheffield Angell
> jangell@orrick.com
> Orrick Herrington & Sutcliffe LLP
> 1000 Marsh Road
> Menlo Park, CA 94025

Attorneys for NextG Networks, Inc.

_____
Timothy L. Boller

1214682_1.DOC