Omid A. Mantashi (SBN 208226)
**Law Offices of Omid A. Mantashi**
360 Grand Avenue, Ste. 90
Oakland, California 94610
Telephone: (510) 593-9442
Facsimile: (510) 868-8310
omid@california.com

Timothy L. Boller (*pro hac vice*)
William O. Ferron, Jr. (*pro hac vice*)
**SEED IP LAW GROUP PLLC**
701 5TH Avenue, Suite 5400
Seattle, WA 98104
Telephone: 206.622.4900
Facsimile: 206.682.6031

Email: TimB@seedip.com
      BillF@seedip.com

Attorneys for Defendant
NewPath Networks, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NextG Networks, Inc., a Delaware corporation,<br><br>           Plaintiff,<br><br>    v.<br><br>NewPath Networks, LLC, a New Jersey limited liability corporation,<br>           Defendant. | No. C 08-1565 VRW<br><br>**DECLARATION OF JARED BARRETT REGARDING THE PROSECUTION HISTORY OF THE PATENT-IN-SUIT**<br><br>Date: September 11, 2008<br>Time: 2:30 p.m.<br>Judge: Honorable Vaughn R. Walker |

I, Jared Barrett, hereby declare and state as follows:

1.     I am an associate at the Seed Intellectual Property Law Group, PLLC, and one of

Defendant and Counterclaimant NewPath Networks LLC ("NewPath") attorneys in this matter.  I

make this declaration in support of NewPath's Opposition to NextG Networks, Inc.'s ("NextG")

motion to strike and to dismiss certain defenses and counterclaims.  The following facts are true of my own knowledge unless otherwise stated.

2.     Attached hereto as Exhibit A is a true and correct copy of an amendment to the patent-in-suit mailed by the putative inventor's counsel to the United States Patent and Trademark Office on or about September 14, 1995, as produced by NextG.

3.     Attached hereto as Exhibit B is a true and correct copy of an amendment to the patent-in-suit mailed by the putative inventor's counsel to the United States Patent and Trademark Office on or about January 29, 1996, as produced by NextG.

4.     Attached hereto as Exhibit C is a true and correct copy of the patent-in-suit.

5.     Attached hereto as Exhibit D is a true and correct copy of an amendment to the patent-in-suit mailed by the putative inventor's counsel to the United States Patent and Trademark Office on or about February 25, 1993, as produced by NextG.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

DATED this 7th day of August, 2008, at Seattle, Washington.

_____
Jared Barrett

DECLARATION OF JARED BARRETT                                           CASE NO. C 08-1565 VRW

1

**CERTIFICATE OF SERVICE**

2

3

I hereby certify that on this 7th day of August, 2008, a true and correct copy of the foregoing

**DECLARATION OF JARED BARRETT REGARDING THE PROSECUTION HISTORY**

4

**OF THE PATENT-IN-SUIT** was served on Plaintiff's counsel by electronic filing upon the

5

following attorneys registered to receive service by email through the Northern District of California

6

Electronic Case Filing System:

7

8

Jeffrey Andrew Miller
jmiller@orrick.com

9

Jason Sheffield Angell
jangell@orrick.com

10

Orrick Herrington & Sutcliffe LLP
1000 Marsh Road

11

Menlo Park, CA 94025

12

Attorneys for NextG Networks, Inc.

13

14

_____

Timothy L. Boller

15

1214775_1.DOC

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JARED BARRETT                                        CASE No. C 08-1565 VRW

Exhibit A

PATENT

Atty dkt: 9580-498

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application :        )
                           )
   Motley et al.           )        Group Art Unit:  2606
                           )
Serial No.:  08/271,259    )        Examiner:  Bacares
                           )
Filed:  July 7, 1994       )
                           )
For:   COMMUNICATIONS SYSTEM

**AMENDMENT**

Honorable Commissioner of Patents and Trademarks
Washington, DC  20231

Sir:

        In response to the Office Action mailed June 14, 1995,

please amend the captioned application as follows:


**IN THE CLAIMS:**

Please amend claims 1, 2, 6, 13, and 14 as follows:


1. {ONCE AMENDED}  A communications system comprising:  a base
centre having a plurality of [one or more] radio transceivers for
providing a number of radio frequency (RF) communications links;
a plurality of fixed radio ports through which RF signals can be
transmitted and received over the air, a fibre optic network for
interconnecting the RF transceivers and the fixed radio ports,
and for carrying the RF signals by means of optical signals, a

P 30119  10/13/95  08271259          1          88687
                              14-1140  030  102      76.00CH

NGP 000930

**Exhibit A – Page 1**

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498

plurality of radio/optical interfaces by which RF signals can be
modulated onto and demodulated from one or more optical signals,
which interfaces are between the RF transceivers and the fibre
optic network, and between the fibre optic network and the fixed
radio ports.

2. {ONCE AMENDED} A communications system comprising:  a base
centre having a plurality of [one or more] radio transceivers for
providing a number of radio frequency (RF) communications links;
a plurality of fixed radio ports through which RF signals can be
transmitted and received over the air; a fibre optic network for
interconnecting the RF transceivers and the fixed radio ports,
and for carrying the RF signals by means of optical signals; a
plurality of radio/optical interfaces by which RF signals can be
modulated onto and demodulated from one or more optical signals,
which interfaces are between the RF transceivers and the fibre
optic network, and between the fibre optic network and the fixed
radio ports; and a matrix switch for selectively interconnecting
the transceivers and the radio ports through the fibre optic
network.

2

88687

NGP 000931

Exhibit A – Page 2

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498

---

6. {ONCE AMENDED}  A communications system [as claimed in Claim

2] comprising: a base centre having a plurality of radio

transceivers for providing a number of radio frequency (RF)

communications links; a plurality of fixed radio ports through

which RF signals can be transmitted and received over the air; a

fibre optic network for interconnecting the RF transceivers and

the fixed radio ports, and for carrying the RF signals by means

of optical signals; a plurality of radio/optical interfaces by

which RF signals can be modulated onto and demodulated from one

or more optical signals, which interfaces are between the RF

transceivers and the fibre optic network, and between the fibre

optic network and the fixed radio ports; and a matrix switch for

selectively interconnecting the transceivers and the radio ports

through the fibre optic network;

        wherein the matrix switch is for switching optical

signals and between the optical matrix switch and the [one or

more] plurality of RF transceivers there are one or more

RF/optical interfaces.

---

3                                           88687

NGP 000932

**Exhibit A – Page 3**

Serial No.: 08/271,259                Motley et al.
Group Art Unit: 2606                  Atty dkt: 36-498

13. {ONCE AMENDED} A communications system comprising:

a base centre having a plurality of [at least one] radio frequency transceivers for establishing at least one radio frequency (RF) communication link;

a plurality of remotely located, fixedly situated, radio frequency (RF) communication ports for transceiving radio frequency (RF) signals via the air;

an optical fibre network connecting said base centre with each of said remote RF communication ports;

an RF/optical signal interface at said base center connected between said optical fibre network and said radio frequency transceivers [transceiver(s)] for converting RF-modulated optical signals to RF electrical signals and for converting RF electrical signals to RF-modulated optical signals; and

an RF/optical signal interface at each of said RF communication ports connected to said optical fibre network for converting RF-modulated optical signals to RF electrical signals and for converting RF electrical signals to RF-modulated optical signals.

4

88687

NGP 000933

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498


14. {ONCE AMENDED}   A cellular communications system for interfacing with plural portable or mobile RF transceivers via plural fixed RF communication ports, said system comprising:

a plurality of trunked RF communication channels including a plurality of [at least one] RF transceivers accessible at a base centre location;

an optical fibre network interconnecting said base centre location to said fixed RF communication ports; and

an RF/optical signal interface at both said base centre and said fixed RF communication ports for converting RF electrical signals to RF-modulated optical signals and for converting RF-modulated optical signals to RF electrical signals so that communications between the base centre and the fixed RF communication ports is via RF-modulated optical signals,

whereby RF [Rf] transceiver resources may be concentrated and commonly located at the base centre for servicing a plurality of fixed RF communication ports.

5                                          88687

NGP 000934

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498


### REMARKS

Reexamination of the captioned application is respectfully requested.


A. SUMMARY OF THIS AMENDMENT

By the current amendment, Applicants:

1.  Amend independent claims 1, 2, 13, and 14 to emphasized that the base center has a plurality of radio transceivers.

2.  Re-write claim 6 as an independent claim, thereby rendering claim 6 allowable per the office action.

3.  Respectfully traverse all prior art rejections.

4.  Enclose an English translation for DE 3,220,817.


B.  THE PATENTABILITY OF THE CLAIMS

The Examiner has basically rejected all pending claims except claim 6 35 USC §103 as being unpatentable over a three way combination.  The combination includes US Patent 4,916,460 to Powell; McKay, "Don't Scrap Your Coax Yet ...", Communications,

6                                       68687

NGP 000935

PAGE 7 IS MISSING FROM THE

ORIGINAL FILE

NGP 000936

6/9/1
DIALOG(R)File 351:DERWENT WPI
(c)1999 Derwent Info Ltd. All rts. reserv.

004351240
WPI Acc No: 85-178118/198530
XRAM Acc No: C85-077710
XRPX Acc No: N85-133861
Leisure shoe with foam intermediate sole - largely encased in closed
integral skin esp. of polyurethane foam
Patent Assignee: KVL KUNSTSTOFFVER (KVLK-N)
Number of Countries: 001  Number of Patents: 001
Patent Family:
Patent No Kind  Date  Applicat No Kind  Date   Main IPC      Week
DE 3347343  A  19850718 DE 3347343   A  19831228              198530 B

Priority Applications (No Type Date): DE 3347343 A 19831228
Patent Details:
Patent   Kind Lan Pg Filing Notes   Application  Patent
DE 3347343  A     22

Abstract (Basic): DE 3347343 A
   A shoe, esp. a sport or leisure shoe, has a sole and an
intermediate sole (10). The intermediate sole is a moulded plastics
foam block or unit designed to provide resilience and wear. This
intermediate sole (10) has, at least over a considerably portion of its
outer face, an injection moulded rubber or plastics coating (12). In
one embodiment, the foam part (10) is polyolefin foam and the outer
skin (12) is closed polyurethane integral foam. In another embodiment
the foam (10) is a porous EVA mixt..
   USE/ADVANTAGE - As a sporting or leisure shoe, where the
intermediate sole is designed to provide resilience in particular. By
largely encasing this sole with a closed outer skin, the advantages of
both a foam sole and a rubber or plastics layer are combined.
   0/0
Title Terms: LEISURE; SHOE; FOAM; INTERMEDIATE; SOLE; ENCASED; CLOSE;
  INTEGRAL; SKIN; POLYURETHANE; FOAM
Derwent Class: A18; A25; A83; P22
International Patent Class (Additional): A43B-005/00; A43B-013/04
File Segment: CPI; EngPI
Manual Codes (CPI/A-N): A12-C04; A12-F01; A12-S04D
Plasdoc Codes (KS): 0009 0010 0231 2437 2447 3232 2536 3242 2537 2538 2545
  2623 2657 3258 2713 2726 3309 0232 1294 0241 3155 0789
Polymer Fragment Codes (PF):
  *001* 014 032 04, 041 046 150 431 443 448 456 461 476 477 49- 491 492 50&
    55& 551 56& 560 562 57& 582 597 598 619 620 651 663 688

NGP 000937

Exhibit A – Page 8

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498


Thus, Powell is concerned solely with establishing a repeater for main radio transmitter site 10/12 at the first location.  There is absolutely no suggestion that fiber optical networks can be used to serve transmitters (i.e., ports) working independently (for example at different frequencies) as occurs in Applicants' invention.

The Examiner seems to believe that a pluralization of Powell would somehow teach or suggest Applicants' claimed invention.  Such is not the case.  If Powell were pluralized, the result would be several independent networks.  Applicants' claimed invention, on the other hand, involves interconnecting all transceivers and ports.  Powell is devoid of any teaching or suggestion of such interconnection of transceivers or ports.

Nor, as the Examiner appears to contend, would it be an obvious necessity to interconnect transceivers and ports in order to implement Powell practically.  To the contrary, Powell describes several commercial applications (see col. 4, lines 14 - 25), none of which even suggest interconnection.  All implementations proposed by Powell involve systems intended to extend coverage of a single cell, having a single base station and one or more remote ports to give infill coverage (for example in a building or a tunnel).  The Examiner's extrapolation in this

8                                                    88687

NGP 000938

Exhibit A – Page 9

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498

regard is totally unsupported by Powell and results (at best)
from hindsight.

McKay, like Powell, only suggests use of fibre to carry
RF signals to a single repeater (note figure D and column 7,
lines 8 - 12).  All combination and distribution of signals is
done in the RF system, and only one optical signal is transmitted
from one transceiver to one port.  In particular, it is stated on
column 7, line 9, that the fibre optic receiver (which detects
the optical signal and generates a corresponding electrical
signal) demodulates the RF signals before they are distributed
(switched).

Barnes shows a mobile radio system in which modulation
of the call traffic onto an RF carrier takes place at the radio
base station.  There is simply no suggestion of carrying the
radio channels (e.g., CH1, fig 9A) over the fixed links (e.g.,
28A, 30A) to and from the central station.  The arrangement of
one of the cell stations (26A-F) is shown in Figure 15, from
which it is readily apparent that one of the functions of the
cell stations is to add the RF modulation.  Note in particular
that the links 528A-C are clearly labelled as "VOICE LINKS".
Barnes makes no suggestion that these links could use RF or
optical carriers, still less that both could be used.

9                                        88687

NGP 000939

Exhibit A – Page 10

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498


Applicants submit that combination of the references is improper. Yet even assuming arguendo the propriety of the combination, Applicants' claimed invention would nevertheless not be realized.

If one were to combine the disclosures of Barnes, Powell and McKay, one would arrive, not at Applicants' claimed system, but at a network of cellular base stations like Barnes' [fed from central stations by voice (baseband) links], and in which one or more of the base stations have repeaters of the type described in Powell or McKay. In other words, Barnes' cell station 26 would be replaced by the base station 10/12 of Powell, and would communicate with the mobile unit 32 by way of Powell's repeater antennas 36, 40. The fibre optic therefore merely forms the end of certain branches of the network, the main interconnections being at baseband, rather than as in Applicants' claim where the network is interconnected by RF modulated optical connections.

Regarding claims 2 and 7, the configuration required by claim 2 requires that switching takes place between the transceivers and radio ports. This necessarily means that the signals being switched are RF modulated. Claim 6 covers the arrangement in which switching is carried out in the optical

10                                               88687

NGP 000940

Exhibit A – Page 11

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

system (i.e., the RF signal is used to modulate an optical
carrier which is then fed to the input of an optical switch).
Claim 7 covers the alternative arrangement in which switching
takes place in the RF system, the RF output of the switch being
used to modulate an optical carrier. The Examiner states that
Barnes discloses an arrangement according to claim 7 (and
consequently the parent claim, claim 2). However, all switching
in Barnes takes place at baseband, with neither optical nor RF
modulation (and certainly not both). It is quite clear in Barnes
that the RF transceivers 516 in Barnes are at the radio ports
(cell stations 26) and not the central station 20. The "RF
switch" 532 does not interconnect between transceivers and radio
ports through a fibre optic network, or any other. It is purely
internal to the radio port (cell station) 26.


C.  MISCELLANEOUS

        Should payment be required and not be found to
accompany this amendment or any accompanying amount be
insufficient, the Commissioner is authorized to charge the
undersigned's deposit account #14-1140 in whatever amount is
necessary for entry of these papers and the continued pendency of

                                11                          88687

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498

the captioned application, including any extension of time fees
and additional claim fees.

    Should the Examiner feel that an interview with the
undersigned would facilitate allowance of this application, the
Examiner is encouraged to contact the undersigned.

                       Respectfully submitted,
                       NIXON & VANDERHYE, P.C.

                       H. Warren Burnam, Jr.
                       Reg. No. 29,366

Sept 14                    1995
1100 North Glebe Road
Eighth Floor
Arlington, VA 22201-4714
Telephone:  (703) 816-4027
Fax:  (703) 816-4100
Attachment:  English translation of DE 3,220,817

12                                                    88687

NGP 000942

Exhibit B

BOX AF

BOX AF -- AFTER FINAL
EXPEDITED PROCESSING REQUESTED

Atty dkt:  36-498

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application :          )
                             )
  Motley et al.              )      Group Art Unit:  2606
                             )
Serial No.:  08/271,259      )      Examiner:  Bacares
                             )
Filed:  July 7, 1994         )
                             )
For:     COMMUNICATIONS SYSTEM


## AMENDMENT AFTER FINAL

Honorable Commissioner of Patents and Trademarks
BOX AF
Washington, DC  20231


Sir:

    In response to the Final Office Action mailed October
31, 1995, please amend the captioned application as follows:


IN THE CLAIMS:

Please amend claims 1, 2, 10 - 15 as follows:


1. {TWICE AMENDED}  A communications system comprising:  a base
centre having a plurality of independently operated radio
frequency (RF) [radio] transceivers for providing a plurality

1

NGP 000951

Exhibit B – Page 1

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

[number] of radio frequency (RF) communications links; a
plurality of fixed radio ports through which RF signals can be
transmitted and received over the air; a fibre optic network for
selectively interconnecting the RF transceivers and the fixed
radio ports, and for carrying the RF signals by means of optical
signals; a plurality of radio/optical interfaces by which RF
signals can be modulated onto and demodulated from one or more
optical signals, which interfaces are between the RF transceivers
and the fibre optic network, and between the fibre optic network
and the fixed radio ports.


2. {TWICE AMENDED}  A communications system comprising:  a base
centre having a plurality of independently operated radio
frequency (RF) [radio] transceivers for providing a plurality
[number] of radio frequency (RF) communications links; a
plurality of fixed radio ports through which RF signals can be
transmitted and received over the air; a fibre optic network for
selectively interconnecting the RF transceivers and the fixed
radio ports, and for carrying the RF signals by means of optical
signals; a plurality of radio/optical interfaces by which RF
signals can be modulated onto and demodulated from one or more

2

NGP 000952

Exhibit B – Page 2

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498

optical signals, which interfaces are between the RF transceivers
and the fibre optic network, and between the fibre optic network
and the fixed radio ports; and a matrix switch for selectively
interconnecting the transceivers and the radio ports through the
fibre optic network.

10. {ONCE AMENDED}  A communication system as described in Claim
1 which call handover is between radio ports is controlled in the
base centre through switching the radio transceiver from one
radio port to another radio port by a [the] matrix switch.

11. {ONCE AMENDED}  A communication system as claimed in Claim 10
in [1] which diversity operation is provided by combining or
switching between two or more radio points in the matrix
switch[ing].

12. {ONCE AMENDED} A communication system as claimed in Claim 1
in which dynamic channel allocation is controlled in the base
centre.

3

105219

NGP 000953

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

13. {TWICE AMENDED} A communications system comprising:

a base centre having a plurality of independently operated radio frequency (RF) transceivers for establishing at least one radio frequency (RF) communication link;

a plurality of remotely located, fixedly situated, radio frequency (RF) communication ports for transceiving radio frequency (RF) signals via the air;

an optical fibre network selectively connecting said base centre with each of said remote RF communication ports;

an RF/optical signal interface at said base center connected between said optical fibre network and said radio frequency transceivers for converting RF-modulated optical signals to RF electrical signals and for converting RF electrical signals to RF-modulated optical signals; and

an RF/optical signal interface at each of said RF communication ports connected to said optical fibre network for converting RF-modulated optical signals to RF electrical signals and for converting RF electrical signals to RF-modulated optical signals.

4

105219

NGP 000954

Exhibit B – Page 4

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

14. {TWICE AMENDED}  A cellular communications system for
interfacing with plural portable or mobile RF transceivers via
plural fixed RF communication ports, said system comprising:

    a plurality of trunked RF communication channels
including a plurality of _independently operated_ RF transceivers
accessible at a base centre location;

    an optical fibre network _selectively_ interconnecting
said base centre location to said fixed RF communication ports;
and

    an RF/optical signal interface at both said base centre
and said fixed RF communication ports for converting RF
electrical signals to RF-modulated optical signals and for
converting RF-modulated optical signals to RF electrical signals
so that communications between the base centre and the fixed RF
communication ports is via RF-modulated optical signals,

    whereby RF transceiver resources may be concentrated
and commonly located at the base centre for servicing a plurality
of fixed RF communication ports.

15. {ONCE AMENDED} A cellular communications system having
trunked RF communication channels at a base station interfacing

5

105219

NGP 000955

**Exhibit B – Page 5**

Serial No.: 08/271,259            Motley et al.
Group Art Unit: 2606              Atty dkt: 36-498

with plural portable or mobile RF transceivers via plural fixed RF communication ports distributed among overlapping cellular communication zones, said system comprising:

an optical fibre network _selectively_ interconnecting said base station and its trunked RF communication channels with said fixed RF communication ports; and

an RF/optical signal interface at each end of the fibre network for converting RF electrical signals to RF-modulated optical signals and vice versa.

## REMARKS

Reexamination of the captioned application is respectfully requested.

A. SUMMARY OF THIS AMENDMENT

By the current amendment, Applicants:

1.  Thank the Examiner for the allowance of claim 6.

2.  Amend claims 10 - 12 either editorially or to correct antecedent basis and dependency.

6

105219

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

    3.   Amend independent claims 1 and 2 to refer to a
plurality (rather than a "number") of radio
frequency (RF) communications links.

    4.   Amend independent claims 1, 2, 13, and 14 to refer
to the RF transceivers being "independently
operated".

    5.   Amend independent claims 1, 2, 13, 14, and 15 to
refer to and the transceivers and radio ports
being "selectively connected"[1].

    6.   Respectfully traverse all prior art rejections.

**B.  THE PATENTABILITY OF THE CLAIMS**

    The Examiner has finally rejected all pending claims
(except allowed claim 6) under 35 USC §103 as being unpatentable
over a three way combination.  The combination includes US Patent
4,916,460 to Powell; McKay, "Don't Scrap Your Coax Yet ...",
Communications, October 1988; and the previously cited Barnes
reference[2].  These three references have been augmented by yet a

---

[1]    The selective interconnection limitations has
previously resided in claim 2, last phrase.

[2]    Both Powell and McKay were cited by the Applicant in an
IDS in the present application.

7

105219

NGP 000957

**Exhibit B – Page 7**

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

fourth reference (Amitay) for rejection of claims 3, 4, 8, 9, 16

and 17).

All prior art rejections are respectfully traversed.

Initially, the Examiner is respectfully requested to

reconsider claim 2.  The Examiner indicated that claim 6 was

deemed allowable as having "a matrix switch for switching optical

signals between the RF transceivers and the RF/optical

interfaces".  Essentially the same limitation resides in claim 2,

whose last words read as follows:


... a matrix switch for selectively interconnecting the

transceivers and the radio ports through the fibre

optic network.


Matrix switch limitations reside also in dependent claims 10, 11.

Based on the foregoing, it appears that the Examiner's

rationale for allowance of claim 6 applies equally to claims 2,

10, and 11, and that claims 2 (and claims dependent thereon), 10,

and 11 should therefore be allowable as well.

US Patent 4,916,460 to Powell basically discloses a

repeater system for communication in a tunnel 18.  Unit 10 at a

105219

NGP 000958

**Exhibit B – Page 8**

Serial No.:  08/271,259          Motley et al.
Group Art Unit:  2606            Atty dkt:  36-498

first location transmits over free space radio link to a receiver

of unit 16 at a second location.  The received RF signal is then

propagated along fiber optic 20 to one or more "secondary"

antennae which broadcast within the confines of tunnel 18.

Conversely, unit 14 at the second location relays via free space

radio link to unit 12 (at the first location) transmitted via

fiber optic 22 from secondary receiver antennae in tunnel 18.

As is apparent, Powell's fiber optics 20 and 22 serve

either as an up-link or a down-link, but not both.  In fact,

Powell's fiber optics 20 and 22 are separate and independent

optical systems.  Powell does not disclose either fiber optics 20

or 22 as having a plurality of transceivers as required by

Applicants' independent claims 1, 2, 13, and 14.  Rather,

Powell's fiber optic 20 is one-to-many; Powell's fiber optic 22

is may-to-one.

These features are either implicitly, or explicitly,

disclosed in the specification, and are not to be found in the

prior art systems of McKay or Powell.  Reasons for making these

proposed amendments will be explained in more detail below.

Thus, Powell teaches a distributed antenna system for

optical communications systems to provide a small scale repeater

105219

NGP 000959

**Exhibit B – Page 9**

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

arrangement between a radio transceiver and an antenna remote

from the transceiver.  The transceiver and antenna are connected

by means of an optical fibre connection over which the RF

modulated signal is carried.  Several secondary antennas 36 may

be connected to the same transceiver 24 to provide a branched

network.  The concept is also illustrated in the reverse

direction with several antennas (e.g., 40) feeding a single

transceiver 14.  It should be clearly understood that in Powell

there are illustrated two quite separate fibre optic systems; a

one to many branched network and a many-to-one branched network.

What is *not* shown is a network having a number of RF transceivers

and a number of antennas which can be interconnected.  All that

Powell shows is two networks, each having a single RF transceiver

permanently connected to a number of antenna sites.  In

particular, in the passage indicated by the Examiner on column 4,

line 13, the only possibilities indicated are "tree-like" (one-

to-many) or "linear" (one-to-one).  The Applicants' claim

language "plurality" avoids any potential objection in this

regard.

       The Examiner hypothesizes that Powell's system could be

extended by having a plurality of transceivers interconnected

10

105219

NGP 000960

**Exhibit B – Page 10**

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

with the antenna sites. However, there is no suggestion in the

prior art that this might be done. It is noted in particular

that in Powell's branched network all the antenna sites are

necessarily transmitting/receiving the same signals, since they

are being used to enlarge the size of a single cell. There is

thus no need for more than one transceiver to be connected to

them. Simply pluralizing Powell's system would simply produce

several topologically separate branched networks, each having a

single transceiver. Alternatively, adding a second transceiver

to a single branched network of the Powell type, as the Examiner

suggests, would not achieve a useful result as each antenna would

transmit the output of all the transceivers.

The Examiner has suggested on page 4 of the Office

Action that a commercially viable version of Powell or McKay

would include a larger number of units. However, Powell and

McKay both only disclose one-to-one or one-to-many configurations

which nevertheless have commercial applications (such as cell

infill). There is nothing in either Powell or McKay to suggest

that the systems described have been simplified to the extent

that they would not be viable in the form described. The

Examiner goes on to say that these hypothetical scaled-up

11

105219

NGP 000961

Serial No.:  08/271,259                    Motley et al.
Group Art Unit:  2606                      Atty dkt:  36-498

versions of Powell or McKay would need a selective

interconnection system.  For the types of use envisaged by Powell

and McKay, this is again not true.  Both disclosures are

concerned with providing infill or other coverage extension

facilities, for which a permanent connection between the

transceiver and antenna sited is suitable.  There is no

suggestion in Powell or McKay of any reason why the repeater

antenna sites of Powell or McKay should ever be disconnected from

their "master" transceivers, still less why they should be

reconnected to another one, which is not even mentioned.

       On page 7 of the Office Action, the Examiner asserts

that Barnes discloses RF communication to and from the central

station (column 30, lines 1 to 11).  Applicants read no such

interpretation into this passage.  The quoted passage forms part

of the description of Figure 15.  It is apparent from this

description as a whole, and in particular from Figure 15 itself,

that communication between the central station and the cell

station is not done by radio frequency signals, but by voice

(baseband) channels 528A-528N.  The RF modulation is applied at

the cell station by means of "radio interface modules" (RIMs)

518A, etc.  Except for set-up and disconnection, the RF channel

12

105219

NGP 000962

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

is in fact completely independent of the central station. The
quoted passage simply states that establishment of the (RF)
channel is initially under the control of the central station.
The passage also states that the channel is independent of the
other channels in the cell station by virtue of using separate
RIMs. There is no suggestion, in Barnes' switched network, of
carrying the signals between the cell station and central station
at RF, still less of modulating such RF onto an optical carrier.

        Combination of the cited documents, should a "skilled
artisan" consider them together in the first place, would lead at
most to a switched network of the Barnes' type, in which one or
more cell stations had repeater antennas connected to the
respective cell station transceiver by an optical fibre link
carrying the RF modulated signals required by that repeater. In
contrast, the present invention consists of migrating all the RF
transceivers to a central station, and selectively
interconnecting the radio ports (antenna sites) with the
transceivers, by means of an optical fibre network. RF modulated
optical signals are transmitted between the transceivers in the
central station and the radio ports. The necessary switching at
the central station to selectively connect transceivers and radio

13

105219

NGP 000963

Exhibit B – Page 13

Serial No.: 08/271,259          Motley et al.
Group Art Unit: 2606            Atty dkt: 36-498

ports may be done in the RF domain or in the optical domain
(claims 6 and 7) but in either case the signals carried over the
optical network are RF-modulated optical signals.

On page 7 of the Office Action, it is suggested that
Applicants have argued on the basis of a limitation which is not
present in the claims, namely that the transmitters operate
independently. It is difficult to imagine why one would wish to
operate all the transmitters together (i.e., not independently)
since one could just as easily use one transmitter connected to
several antennas, as Powell does. It is therefore implicit in
Applicants' claims that the transceivers are independent, since
the alternative would serve no practical purpose. This
implication is now re-enforced by the current amendment that the
transceivers are selectively connected to the radio ports.
Moreover, the current amendment to the effect that the
transceivers operate independently further makes this distinction
explicit.

14

105219

NGP 000964

Exhibit B – Page 14

Serial No.:  08/271,259                     Motley et al.
Group Art Unit:  2606                       Atty dkt:  36-498

## C.  MISCELLANEOUS

In view of the foregoing and other considerations, all rejections are mooted and all claims deemed allowable.  A formal indication of allowability is earnestly solicited.

Should payment be required and not be found to accompany this amendment or any accompanying amount be insufficient, the Commissioner is authorized to charge the undersigned's deposit account #14-1140 in whatever amount is necessary for entry of these papers and the continued pendency of the captioned application, including any extension of time fees and additional claim fees.

Should the Examiner feel that an interview with the undersigned would facilitate allowance of this application, the Examiner is encouraged to contact the undersigned.

Respectfully submitted,

NIXON & VANDERHYE, P.C.

H. Warren Burnam, Jr.
Reg. No. 29,366

_January 29_ 1996
1100 North Glebe Road
Eighth Floor
Arlington, VA 22201-4714
Telephone:  (703) 816-4027
Fax:  (703) 816-4100

15

105219

NGP 000965

Exhibit B – Page 15



NGP 000966

Exhibit B – Page 16



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RESPONSE UNDER RULE 116

**BOX AF** EXPEDITED HANDLING PROCEDURES

Docket: 36-498

C# M#

Patent Application of:

NOTLEY, et al

Serial No.: 08/271,259

Filed: July 7, 1994

Title: COMMUNICATIONS SYSTEM

Group Art Unit: 2606

Examiner: Bacares

Honorable Commissioner of Patents
and Trademarks
Washington, DC 20231

Date: January 29, 1996

Sir:

### RESPONSE/AMENDMENT/LETTER

This is a response/amendment/letter in the above-identified application and includes an attachment which is hereby incorporated by reference and the signature below serves as the signature to the attachment in the absence of any other signature thereon.

**Fees are attached as calculated below:**

Total effective claims a f t e r amendment ( 20 )   minus highest number
previously paid for (    20    ) (at least 20) =    0    x $22 . . . . . . . . . . . . . . . . . . . . . . . . .    $    0.00

Independent claims a f t e r amendment ( 5 )   minus highest number
previously paid for (    5    ) (at least 3) =    0    x $78 . . . . . . . . . . . . . . . . . . . . . . .    $    0.00

If proper multiple dependent claims now added for first time, add $250 (ignore improper)  . . .    $

Petition is hereby made to extend the current due date so as to cover the filing date of this paper and attachment(s) ($110/1 month; $380/2 months; $900/3 months) . . . . . . . . . . . . . . .    $

Terminal disclaimer enclosed, add $110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $

[      ] Please enter the previously unentered              filed on

First submission after Final Rejection pursuant to 37 CFR 1.129(a) ($750) . . . . . . . . . . . . .    $

Second submission after Final Rejection pursuant to 37 CFR 1.129(a) ($750)  . . . . . . . . . . . .    $

**SUBTOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $    0.00

If "small entity," then enter half (1/2) of subtotal and subtract . . . . . . . . . . . . . . . . . . . . . . . . . . .    -$(              )

[      ] Statement filed herewith

Rule 56 Information Disclosure Statement Filing Fee ($220) . . . . . . . . . . . . . . . . . . . . . . . . .    $

Assignment Recording Fee ($40.00) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $

**TOTAL FEE ENCLOSED** . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $    0.00

The Commissioner is hereby authorized to charge any deficiency in the fee(s) filed, or asserted to be filed, or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Account No. 14-1140. A duplicate copy of this sheet is attached.

1100 North Glebe Road
8th Floor
Arlington, VA 22201-4714
Telephone: (703) 816-4000
Facsimile: (703) 816-4100

HWB:jbf

NIXON & VANDERHYE P.C.

By Atty.: H.Warren Burnam, Jr.    , Reg. No. 29,366

Signature: _Anverre Burnan_

NGP 000967

**Exhibit B – Page 17**

Exhibit C

US005682256A

# United States Patent [19]

## Motley et al.

[11] **Patent Number:** 5,682,256

[45] **Date of Patent:** Oct. 28, 1997

[54] **COMMUNICATIONS SYSTEM**

[75] Inventors: **Andrew James Motley**, Woodbridge; **Anthony Gerard Chadney**, Ipswich, both of England

[73] Assignee: **British Telecommunications Public Limited Company**, London, England

[21] Appl. No.: **607,199**

[22] Filed: **Feb. 26, 1996**

**Related U.S. Application Data**

[63] Continuation of Ser. No. 271,259, Jul. 7, 1994, abandoned, which is a continuation of Ser. No. 689,923, filed as PCT/GB89/01341, Nov. 10, 1989, abandoned.

[30] **Foreign Application Priority Data**

Nov. 11, 1988  [GB]  United Kingdom .............. 8826476

[51] Int. Cl.⁶ .......................... H04J 14/00; H04B 10/00

[52] U.S. Cl. ...................... 359/117; 359/145; 359/172; 455/33.4; 455/54.1; 455/56.1

[58] Field of Search .......................... 359/117, 118, 359/135, 136, 145, 151, 167, 172, 152; 455/16, 53.1, 54.1, 56.1, 11.1, 33.1, 33.4; 379/56, 59

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 4,222,115 | 9/1980 | Cooper et al. | 375/1 |
| 4,308,429 | 12/1981 | Kai et al. | 455/33.4 |
| 4,456,793 | 6/1984 | Baker et al. | 359/152 |
| 4,468,765 | 8/1984 | Hensel et al. | 359/117 |
| 4,535,441 | 8/1985 | Schwaertzel et al. | 445/33.4 |
| 4,670,899 | 6/1987 | Brody et al. | 455/33.4 |
| 4,686,671 | 8/1987 | Buriua et al. | 455/56 |
| 4,807,222 | 2/1989 | Amitay | 359/172 |
| 4,817,204 | 3/1989 | Jannell et al. | 359/152 |
| 4,829,512 | 5/1989 | Nakai et al. | 359/117 |

*(List continued on next page.)*

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 0156336 | 3/1985 | European Pat. Off. . | |
| 0156336 | 10/1985 | European Pat. Off. | H04Q 7/04 |
| 0233963 | 9/1987 | European Pat. Off. . | |
| 8610195 | 9/1987 | European Pat. Off. | H04B 7/26 |
| 0391597 A3 | 10/1990 | European Pat. Off. | H04Q 7/04 |
| 0471487 A1 | 8/1991 | European Pat. Off. | H03L 7/185 |
| 0468688 A3 | 9/1992 | European Pat. Off. | H04B 7/26 |
| 3135231 | 4/1983 | Germany | H04Q 7/04 |
| 3220817A1 | 12/1993 | Germany | H04B 9/00 |
| 55-143854 | 11/1980 | Japan | H04B 7/00 |
| 55-14385 | 1/1981 | Japan | H04B 9/00 |
| 2138652 | 10/1984 | United Kingdom . | |
| 8311091 | 10/1984 | United Kingdom | H04Q 11/02 |
| 2214755 | 9/1989 | United Kingdom | H04B 5/00 |

**OTHER PUBLICATIONS**

*Proceedings of the IEEE*, vol. 75, No. 4, Apr. 1987, IEEE, (New York, US). D.C. Cox: "Universal Digital Portable Radio Communications," pp. 436–477.

*Patent Abstracts of Japan*, vol. 5, No. 15 (E-43)(687), 27 Jan. 1981 & JP A 55143854 (Nippon Denshind Denwa Kosha) 10 Nov. 1980.

*(List continued on next page.)*

Primary Examiner—Melvin Marcelo
Assistant Examiner—Rafael Bacares
Attorney, Agent, or Firm—Nixon & Vanderhye, P.C.

[57] **ABSTRACT**

A communications system has a base center with radio transceivers for providing a number of radio frequency (RF) communications links and a plurality of fixed radio ports through which RF signals can be transmitted and received over the air. A fiber optic network interconnects the RF transceivers and the fixed radio ports and carries the RF signals by means of optical signals. There is a plurality of radio/optical interfaces by which RF signals can be modulated onto and demodulated from one or more optical signals, between the RF transceivers and the fiber optic network, and between the fiber optic network and the fixed radio ports. A matrix switch selectively interconnects the transceivers and the radio ports through the fiber optic network.

**20 Claims, 5 Drawing Sheets**



**5,682,256**
Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,829,544 | 5/1989 | Barnes et al. | 455/56 |
| 4,890,315 | 12/1989 | Bendixen et al. | 379/59 |
| 4,916,460 | 4/1990 | Powell | 359/152 |
| 5,001,757 | 3/1991 | Field et al. | 381/13 |
| 5,067,173 | 11/1991 | Gordon et al. | 359/127 |
| 5,109,532 | 4/1992 | Petrovic et al. | 455/63 |
| 5,199,062 | 3/1993 | Von Meister et al. | 379/67 |

## OTHER PUBLICATIONS

Way et al. "90-Channel FM Video Transmission to 2048 Terminals Using Two Inline Traveling-Wave Laser Amplifiers in a 1300 nm Subcarrier Multiplexed Optical System", pp. 37–39.

Fye, "Design of Fiber Optic Antenna Remoting Links for Cellular Radio Application", IEEE 1990, pp. 622–625.

Symposium Record CATV Session, Jun. 1985 note fig. 3.

Leaflet: Walmore Fibrecom, distributed by Walmore Electronics Limited, Laser House, 132–140 Goswell Road, London, England.

"Don't Scrap Your Coax Yet, But See What A Strand Of Plastic Can Do", by David McKay, Decibel Products, *Communications.*

David McKay, Moving RF Over Fiber Optics, Oct. 1988, all.

Gerd Keiser, Optical Fiber Communication, 1983, p. 8.

Donald C. Cox, Universal Digital Portable Radio Communications, Apr. 1987, p. 436–477.

NGP 000003

Exhibit C – Page 2



Fig.1.

NGP 000004

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 06/24/2005

Exhibit C – Page 3

U.S. Patent     Oct. 28, 1997     Sheet 2 of 5     5,682,256

## Fig.2a.



✳ DENOTES CONNECTION OF A COLUMN TO A ROW THUS COLUMN M IS SHOWN CONNECTED TO ROWS 1, N-1 AND N

## Fig.2b.



NGP 000005

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 06/24/2005

Exhibit C – Page 4



Fig.3.

NGP 000006

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 06/24/2005

Exhibit C – Page 5

**U.S. Patent**    Oct. 28, 1997    Sheet 4 of 5    5,682,256



Fig.4.

NGP 000007

ClibPDF - www.fastio.com

Copy provided by USPTO from the PIRS Image Database on 06/24/2005

Exhibit C – Page 6

## Fig.5a.



## Fig.5b.



NGP 000008

Copy provided by USPTO from the PIRS Image Database on 06/24/2005

Exhibit C – Page 7

5,682,256

1

# COMMUNICATIONS SYSTEM

This is a continuation of application Ser. No. 08/271,259, filed Jul. 7, 1994, now abandoned, which in turn is a continuation of application Ser. No. 07/689,923, filed as PCT/GB89/01341 Nov. 10, 1989, now abandoned.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to a communications system, and in particular to a system for interconnecting mobile radio (RF) units to a fixed network or system e.g. PSM, ISDN, LAN or PBX.

### 2. Description of Related Art

At present, for example, in a cellular radio system mobile radio (RF) units communicate with fixed base stations which have radio transceivers that are connected to a switching control centre which is in turn coupled to the PSTN. In the proposed Telepoint system, cordless telephones (CTs) will be able to access the PSTN via radio communication with fixed base stations equiped with radio transceivers which are directly connected to the PSTN. In both these examples radio transceivers and base stations proliferate in the connection between the mobile user and the PSTN, or other network. These systems are therefore complicated and expensive. Future systems will want to provide improved coverage including the provision of many small radio "cells", and hence many base stations and radio transceivers will be required.

Difficulties in finding appropriate base station sites and the costs of equipping them may make such conventional developments impracticable; certainly they reduce the commercial attractiveness of such projects. The present invention seeks to provide a communication system of simplified structure and improved performance.

## SUMMARY OF THE INVENTION

According to a first aspect the invention provides a communications system comprising: a base centre having one or more radio transceivers for providing a number of radio frequency (RF) communications links; a plurality of fixed radio ports through which RF signals can be transmitted and received over the air; a fibre optic network for interconnecting the RF transceivers and the fixed radio ports, and for carrying the RF signals by means of optical signals; a plurality of radio/optical interfaces by which RF signals can be modulated onto and demodulated from one or more optical signals, which interfaces are between the RF transceivers and the fibre optic network, and between the fibre optic network and the fixed radio ports.

The present invention also provides a communications system comprising: a base centre having one or more radio transceivers for providing a number of radio frequency (RF) communications links; a plurality of fixed radio ports through which RF signals can be transmitted and received over the air; a fibre optic network for interconnecting the RF transceivers and the fixed radio ports, and for carrying the RF signals by means of optical signals; a plurality of radio/optical interfaces by which RF signals can be modulated onto and demodulated from one or more optical signals, which interfaces are between the RF transceivers and the fibre optic network, and between the fibre optic network and the fixed radio ports; and a matrix switch for selectively interconnecting the transceivers and the radio ports through the fibre optic network.

2

The present invention allows for centralisation of transceivers into base centres, and the consequent advantages in terms of technical and commercial gain, by having the transceivers selectively connectable through the fibre optic network to the RF ports.

The RF Communication linking may for example, be time division multiplexed (TDM) or frequency division multiplexed (FDM).

## BRIEF DESCRIPTION OF THE DRAWINGS

A preferred embodiment of the invention will now be described by way of example and with reference to the accompanying drawings, wherein:

FIG. 1 is a schematic block diagram of a communications system according to a preferred embodiment of the invention;

FIG. 2a is a schematic block diagram of an optical matrix switch which can form part of the preferred embodiment;

FIG. 2b is a schematic block diagram of an RF matrix switch which can form part of the preferred embodiment;

FIG. 3 is a schematic view of another embodiment of the invention.

FIG. 4 is a schematic depiction of an RF switch; and

FIGS. 5(a) and 5(b) are schematic diagrams of possible optical switch elements.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

The preferred embodiment illustrated in FIG. 1 is a multi-user, area coverage radio distribution system using an optical network 2,4 to link the fixed radio distribution ports 1 to a centralised radio and other signal processing base centre 10. An important feature of the system is the use of an optical carrier modulated, e.g. amplitude modulated, with a radio frequency (RF) signal.

In both the base centre 10 and RF ports 1 there are, arranged in different ways, radio/optical interfaces which can place an RF signal onto an optical carrier or conversely recover an RF signal from an optical carrier. The modulation of the optical carrier may be achieved by driving a suitable laser device with the input RF signal so that output of the laser is effectively intensity or amplitude modulated by the RF signal. With this method, a suitable optical detector receiving the amplitude modulated optical signal can produce a direct RF output. In the present specification, the term radio/optical interface is used in this context.

The radio ports 1 each have a radio/optical interface which receives and transmits radio carriers from and to roaming radio equipment. The radio carriers to be sent/received from the centralised location are placed onto/taken off an optical carrier, e.g. as described above. The optical network 2,4 linking the radio ports 1 to the base centre 10 is generally conventional, having optical links carrying RF carrier/carriers on optical carrier/carriers. Each optical link is shown as bidirectional. However, separate links could be provided for each direction. Within the optical system are optical multiplexers/demultiplexers (M+D) 4. Each multiplexer concentrates a number of optical carriers, say X, onto a fewer number of optical links than X. The demultiplexer splits a number of optical carriers onto individual optical links.

At the base centre 10 the optical system 2,4 is connected to an optical multiplexer and demultiplexer (M+D) 14. The M+D 14 is connected (illustratively) by M optical lines to an

NGP 000009

**Exhibit C – Page 8**

5,682,256

3

N×M matrix switch 13, which will be described below in more detail. The N×M matrix switch 13 has N RF links to a number (N) radio transceivers 15. The radio transceivers 15 are connected through a switch 17 to a number (K) channels of another network which may be ISDN, cellular, LAN, PBX etc. K may be greater than or equal to N. Also in the base centre 10, a central unit 16 is connected to the switch 17, N×M matrix switch, and M+D 14 to control optical, RF, and baseband routing and switching, and co-ordinate the allocation of RF carriers and channels in conjunction with mobile equipment.

A central part of the base centre 10 is the N×M matrix switch 13. This multiplexes any of the N radio carriers onto any of the M optical transmission lines, i.e. none, one or more of the radio carriers may be on any one of the optical carriers at any one time. The N×M matrix switch 13 may be configured in one of two ways, as shown in FIGS. 2a and 2b. In each case, the radio/optical interface places the RF carriers to be transmitted from the central transceivers onto the optical carrier(s) and takes off, from the optical carrier (s), the RF carriers to be received by the central transceivers. The switching may be optical (FIG. 2a), in which case the radio/optical interface is on the radio "side" of the switch, or the switch may be a radio (RF) matrix switch (FIG. 2b), in which case the radio optical interface is on the optical system "side" of the switch. In either case, the overall result is that the N radio lines can be multiplexed onto the M optical lines.

The advantages of the system of the preferred embodiment are profound. A user can access the external network through any of the radio ports 1 with a suitable RF transceiver, e.g. a cordless telephone (CT), and be connected to a free one of the N transceivers 15. Provided the RF capacity was available, all N transceivers could be employed in calls to/from a particular one of the radio ports 1, or as would be more likely, the usage of the transceivers would me distributed among the radio ports of the system. Here lies a key advantage of the system: the centralisation of the radio transceivers. In the present system the radio transceivers are centralised, allowing more economic use and facilitating maintenance etc. Other significant advantages include the possibility of handover between ports covering different zones or areas, by simply switching between optical carriers, i.e. by switching within the N×M matrix switch 13. Also the use of diversity can easily be achieved centrally through switching or combining lines to 2 or more ports, to improve performance of mobiles covered by those ports. Further, advantageous use of the RF system can be achieved because any of the carriers allocated to the service, rather than a given subset, can be dynamically assigned by the centralised base, to a given zone or cell. Thus an RF carrier may be allocated to both zone 1 and zone 4, but to different users. At another time, RF carrier may be assigned to just zone 3. The total number of users may remain more or less constant for the whole system, but user density within the system may vary. For example, all the users may shift from zone 1 down to zone 4, with all the central transceivers continually active. If transceivers were placed remotely in each of the zones, the same number of transceivers as that at a central location would be required in each of the zones to meet the peak traffic demand during the day, even though they could remain idle for much of the time. Four times the number of transceivers of the centralised configuration would then be required for the system of FIG. 1, hence the improved trunking performance of the centralised scheme, minimising the cost of providing transceivers, the quantity of equipment in the field and affording a potential reduction in maintenance and installation costs.

4

Handover requires a change of base transceiver as a mobile transits zones. This need no longer be necessary as the switch, block 3, simply switches the active transceiver for a given mobile from one zone to another as the mobile makes the transition. Thus handover break is reduced to a potentially very short optical or RF switch time compared to the much longer period required to switch between transceivers.

The spectrum efficiency of many radio distribution systems are increased if the RF transmissions within the system are synchronised. This is difficult if transceivers are spread over several locations, but more straightforward when they are centralised.

An alternative embodiment the invention is shown in FIG. 3 and is very similar to that of FIG. 1, except that the optical system does not incorporate multiplexing/demultiplexing. Thus there are no M+Ds 4 and the M outputs of N×M switch 13 are connected directly to the radio ports 1. There is therefore a permanent 1 to 1 correspondence between the optical lines in the N×M switch 13 and the radio ports 1.

The embodiment of the invention described is based on the use of frequency division multiple access, where each communications link is on a separate radio frequency. As an alternative, time division multiple access could be used, where each communication link exists on separate time slots on a single radio channel. In this case there may still be multiple transceivers in the base centre 10 to cope with the traffic demand and hence provide frequency/timeslot reuse at the radio distribution ports 1. The connection from the transceivers 15 to the matrix switch 13 will then be by N radio links with P timeslots each, making N×P links in total to the matrix switch 13 from the transceivers 15. An extension of this approach is the possibility of a hybrid time and frequency division access system, with multiple radio carriers and several timeslots on each.

An example of a form of an RF switch is shown in FIG. 4. The figure shows the RF matrix switch in a three distribution point system demonstrator. The RF matrix switch interconnects the four radio transceivers 51 (with their associated isolator circuits 52) to the three circuits each of which feeds a distribution point via a pair of fibres. Bi-directional RF connections for all the combinations of base unit and D.P. are made via switches that allow either through connection or isolation of the connection path. These switches are under computer control.

The signals from/to the radio transceiver 51 are split/combined in four 3 way combiners 53 (these are acutually 4 way combiners with the spare output feeding to the scanning receiver 54) with each output/input passing through a switch that can isolate that output/input. From the switches the signals go to the inputs of one of the three 4 way combiners 55 and hence to/from the D.P.s via one of the three RF/optical interfaces 56.

These switches are under microprocessor control and allow the RF matrix to switch any transceiver to any combination of the distribution points and conversely a distribution point to any combination of the transceivers. Thus a base unit can feed all the distribution points simultaneously then by changing the switches feed only one distribution point.

Two examples of the elements for 94 optical switch are shown in FIG. 5. There are two basic technologies; (i) Bulk Optic Devices and (ii) Guided Wave Devices.

A bulk optic switch element, shogun in FIG. 5(a), uses mechanical or physical reorientation of the optical path to achieve the switching of the incoming optical signals

NGP 000010

Exhibit C – Page 9

5,682,256

5

between output ports. An example of this type of switch is presented for a single input switchable between two outputs. Other switch configurations using this as a basic building block facilitate 2×2 and 2×4 switches.

A guided wave device switch element, shown in FIG. 5(b), uses the electro-optic effect to change the optical propagation characteristics of switch waveguides through the application of electric fields. An example of this device type is the Mach Zender Inteferometer (MZI) shown in FIG. 5(b). This type of switch can be extended from a simple 2×2 to a non-blocking 8×8 switch matrix.

We claim:

1. A communications system comprising: a base centre having a plurality of independently operated radio frequency (RF) transceivers at the base centre for providing a plurality of radio frequency (RF) communications links; a plurality of fixed radio ports through which RF signals can be transmitted and received over the air; a fibre optic network for selectively interconnecting the RF transceivers and the fixed radio ports, and for carrying the RF signals by means of optical signals; a plurality of radio/optical interfaces by which RF signals can be modulated onto and demodulated from one or more optical signals, which interfaces are between the RF transceivers and the fibre optic network, and between the fibre optic network and the fixed radio ports.

2. A communications system comprising: a base centre having a plurality of independently operated radio frequency (RF) transceivers for providing a plurality of radio frequency (RF) communications links; a plurality of fixed radio ports through which RF signals can be transmitted and received over the air; a fibre optic network for selectively interconnecting the RF transceivers and the fixed radio ports, and for carrying the RF signals by means of optical signals; a plurality of radio/optical interfaces by which RF signals can be modulated onto and demodulated from one or more optical signals, which interfaces are between the RF transceivers and the fibre optic network, and between the fibre optic network and the fixed radio ports; and a matrix switch for selectively interconnecting the transceivers and the radio ports through the fibre optic network.

3. A communications system as claimed in claim 2 wherein the RF links are frequency division multiplexed.

4. A communications system as claimed in claim 2 wherein the RF links are time division multiplexed.

5. A communications system as claimed in claim 2, wherein there is means for combining RF signals to or from one or more of the RF ports.

6. A communications system comprising: a base centre having a plurality of radio transceivers for providing a number of radio frequency (RF) communications links; a plurality of fixed radio ports through which RF signals can be transmitted and received over the air; a fibre optic network for interconnecting the RF transceivers and the fixed radio ports, and for carrying the RF signals by means of optical signals; a plurality of radio/optical interfaces by which RF signals can be modulated onto and demodulated from one or more optical signals, which interfaces are between the RF transceivers and the fibre optic network, and between the fibre optic network and the fixed radio ports; and a matrix switch for selectively interconnecting the transceivers and the radio ports through the fibre optic network;

wherein the matrix switch is for switching optical signals and between the optical matrix switch and the plurality of RF transceivers there are one or more RF/optical interfaces.

7. A communications system as claimed in claim 2 wherein the matrix switch is for switching RF signals, and

6

between the RF matrix switch and the fibre optic network there are one or more RF/optical interfaces.

8. A communications system as claimed in claim 1 wherein there is multiplexing/demultiplexing of the optical signals in the fibre optic network.

9. A communications system as claimed in claim 1 wherein the fibre optic network incorporates wavelength routing of optical signals.

10. A communication system as described in claim 1 which call handover is between radio ports is controlled in the base centre through switching the radio transceiver from one radio port to another radio port by a matrix switch.

11. A communication system as claimed in claim 10 in which diversity operation is provided by combining or switching between two or more radio points in the matrix switch.

12. A communication system as claimed in claim 1 in which dynamic channel allocation is controlled in the base centre.

13. A communications system comprising:

a base centre having a plurality of independently operated radio frequency (RF) transceivers at the base centre for establishing at least one radio frequency (RF) communication link;

a plurality of remotely located, fixedly situated, radio frequency (RF) communication ports for transceiving radio frequency (RF) signals via the air;

an optical fibre network selectively connecting said base centre with each of said remote RF communication ports;

an RF/optical signal interface at said base center connected between said optical fibre network and said radio frequency transceivers for converting RF-modulated optical signals to RF electrical signals and for converting RF electrical signals to RF-modulated optical signals; and

an RF/optical signal interface at each of said RF communication ports connected to said optical fibre network for converting RF-modulated optical signals to RF electrical signals and for converting RF electrical signals to RF-modulated optical signals.

14. A cellular communications system for interfacing with plural portable or mobile RF transceivers via plural fixed RF communication ports, said system comprising:

a plurality of trunked RF communication channels including a plurality of independently operated RF transceivers accessible at a base centre location;

an optical fibre network selectively interconnecting said base centre location to said fixed RF communication ports; and

an RF/optical signal interface at both said base centre and said fixed RF communication ports for converting RF electrical signals to RF-modulated optical signals and for converting RF-modulated optical signals to RF electrical signals so that communications between the base centre and the fixed RF communication ports is via RF-modulated optical signals,

whereby RF transceiver resources may be concentrated and commonly located at the base centre for servicing a plurality of fixed RF communication ports.

15. A cellular communications system having trunked RF communication channels at a base station interfacing with plural portable or mobile RF transceivers via plural fixed RF communication ports distributed among overlapping cellular communication zones, said system comprising:

NGP 000011

Exhibit C – Page 10

5,682,256

7

an optical fibre network selectively interconnecting said base station and its trunked RF communication channels with said fixed RF communication ports; and

an RF/optical signal interface at each end of the fibre network for converting RF electrical signals to RF-modulated optical signals and vice versa.

16. A communications system as in claim 2 wherein there is multiplexing/demultiplexing of the optical signals in the fibre optic network.

17. A communications system as in claim 2 wherein the fibre optic network incorporates wavelength routing of optical signals.

8

18. A communication system as in claim 2 wherein call handover between radio ports is controlled in the base centre through switching the radio transceiver from one radio port to another radio port by the matrix switch.

19. A communication system as in claim 2 wherein diversity operation is provided by combining or switching between two or more radio points in the matrix switching.

20. A communication system as in claim 2 wherein dynamic channel allocation is controlled in the base centre.

*  *  *  *  *

ClibPDF - www.fastio.com

NGP 000012

**Exhibit C – Page 11**

Exhibit D

Corres. and Mail

BOX AF

#9 'm
Aegument
3-3-93

2612

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED
93 MAR -2 AM 8: 10
GROUP 260

In re PATENT APPLICATION of

MOTLEY et al

Serial No. 07/689,923

Filed:  May 28, 1991

For:  COMMUNICATIONS SYSTEM

Atty. Ref:  36-498

Group:  2612

Examiner:  Bacares

* * * * * * * * * * * * * *

February 25, 1993

Honorable Commissioner of Patents
 and Trademarks
Washington, D.C. 20231

RESPONSE TO FINAL REJECTION UNDER 37 C.F.R. 1.116

Sir:

Responsive to the <u>Final</u> Official Action dated November 25, 1992, reconsideration of the above-identified application is respectfully requested in view of the following comments.

Initially, the Examiner's attention is drawn to the attached copy of the PCT International Search Report, the patent references cited therein and an appropriate Form PTO-1449. In the Notice of References Cited (Form PTO-892), forwarded with the first Official Action dated 4/6/92, it appears that all six references (one published paper and five patent documents) cited in the PCT report are intended to have been officially cited and have actually been considered. Indeed, the six references in question are identified with asterisks and no copy of them was

NGP 000400

MOTLEY et al                    - 2 -
Serial No. 07/689,923

furnished with the first Official Action in accordance with MPEP
Section 707.05(a).

Although the undersigned therefore has previously assumed
that all of the PCT International Search Report references were
officially cited and considered, in reviewing the file for this
response it has just been noted that some of the document
numbers in the earlier Form PTO-892 appear to be incomplete
and/or incorrect.  For example, the PCT cited GB 2,138,652
published application does appear to have been considered, but
Form PTO-892 references it as document number "8311091" (its UK
application number rather than its published specification
number).

Accordingly, to insure that the record is complete and
accurate, a fresh copy of the five patent references cited in
the International Search Report are attached (with an English
translation of the two German language documents), together with
a Form PTO-1449.  The Examiner is respectfully requested to
either initial and enter the attached Form PTO-1449 or to
correct the existing earlier supplied Notice of References Cited
(Form PTO-892).

Under the circumstances, it is not believed that any
additional fee should be due for this correction of official
citations.  However, if such a fee is deemed necessary, then

NGP 000401

MOTLEY et al                          - 3 -
Serial No. 07/689,923

authority is hereby given to charge the undersigned's Account
No. 14-1140 so as to cover any such required fee.

     The rejection of claims 1-12 under 35 U.S.C. §103, based on
Barnes in view of Amitay, is respectfully traversed.

     Both independent claims 1 and 2 (and therefore all
dependent claims 3-12, as well) define a communications system
wherein audio-modulated radio frequency carrier signals exist
both in the air link extending away from fixed radio ports
(e.g., to mobile radio telephones) and in the reverse direction
within an optical fiber network (leading from the fixed shared
radio ports to a base center having radio frequency
transceivers).  By only modulating/demodulating the RF carrier
at a point remote from the air interface (e.g., the fixed radio
ports), the applicant has devised a system which gains
tremendous efficiencies -- both in the use of RF channels and in
the use of RF transceiver hardware.  The use of RF-modulated
optical signals in a fiber optical network interconnecting the
centralized and shared RF transceiver resources (e.g., at the
base center) is a key feature of both independent claims 1 and
2.

     Neither Barnes nor Amitay in any way suggests such a novel
cellular radio system architecture.  In particular, both Barnes
and Amitay only use RF carriers (whether modulated onto an

MOTLEY et al                              - 4 -
Serial No. 07/689,923

optical signal or not) over air links (i.e., over the air link
between fixed radio cell stations 26 and mobile car radio
telephones 32 in Barnes or over the air link between the user
transceivers 10 and the RBIUs in Amitay).

This is a far cry from the system defined in applicants'
independent claims 1 and 2, both of which require a fiber optic
network interconnecting RF transceiver(s) at a base center and a
plurality of remotely located fixed radio ports, RF carrier
signals being passed over the optical fiber network and via an
air-link emanating from the fixed radio ports. There is simply
no suggestion of any such claimed features in either of the
cited references (nor in any possible combination thereof).

While Barnes et al does indeed have RF transceivers to
communicate on RF channels between cars 32 and cell stations 26,
these RF channels of communication links exist only in such air
links.  The circuits extending from the fixed radio ports 26
back into the communication network are solely voice (i.e.,
audio) circuits 30 and related control circuits 28 (the latter
being expressly for the purpose of controlling the RF
transceivers, etc. which are remotely located at each of the
cell stations 26 -- rather than being centrally located back at
the base center station as required by claims 1 and 2 of this
application).  To the extent that the Examiner's comments
indicate that there are any RF signals except in the air link

NGP 000403

**Exhibit D – Page 4**

MOTLEY et al                          - 5 -
Serial No. 07/689,923

between fixed radio ports 26 and cars 32 in Barnes et al, it is
respectfully submitted that such comments are erroneous.

Amitay also locates all RF transceiver circuitry remotely
in the RBIU.  Although an optical fiber bus is used instead of
wire circuits in the connections between controller 16 and the
individual cell stations (RBIU) 11, the demodulated signals
transported over the bus are simply digital data signals at that
point in the system.  Thus, neither Barnes nor Amitay teaches or
in any way even conceivably suggests that RF carriers should be
conducted on optical fiber networks beyond any air communication
link with mobile units.  Only the applicant has suggested this
novel arrangement which permits concentration of the RF
transceiver equipment at a shared resource base center.

The Examiner suggests that optical fibers could be
substituted from Amitay into Barnes.  The exact manner of such
substitution is not readily apparent.  However, even if one does
merely substitute optical fiber for copper wires somewhere in
Barnes, there would still be no RF carriers transmitted anywhere
-- except in the air link between fixed radio ports and mobile
units.  Furthermore, there is no suggestion in the references of
RF transceiver resource sharing such as is made possible by the
applicants' novel optical fiber network (which permits shared
radio transceiver resources to be located centrally rather than
duplicated and remotely located at the fixed radio port sites).

NGP 000404

Exhibit D – Page 5

MOTLEY et al                    – 6 –
Serial No. 07/689,923

This feature is becoming, of course, ever more critical as the number of fixed radio ports proliferates and/or as the individual cell size is decreased.

The Examiner's continued assertion that "it is well known to replace transmission lines with optical fibers since optical fiber offers greater bandwidth and lower attenuation" is not understood. While the Examiner's comment may have relevance for some situations (e.g., for telephone trunk circuits in general) that particular feature of optical fiber does not lead one to think of applicants' novel system architecture. Furthermore, even if this general statement about optical fibers might somehow lead one to use optical fibers instead of copper someplace in the Barnes and/or Amitay systems, neither Barnes nor Amitay would provide any RF communication links over such substituted optical fibers. Rather, the express teaching of both these references is directly contrary to applicants' claimed invention since both of the references teach RF communication links only in the air between each fixed radio port and mobile units. This conventional prior art "wisdom" thus requires one to locate RF transceivers at each fixed radio port site--rather than at a shared resource central site.

In apparent intended connection with the Examiner's just discussed comment, the Official Action goes on to state:

NGP 000405

Exhibit D – Page 6

MOTLEY et al                      - 7 -
Serial No. 07/689,923

> "This would facilitate receiving the RF
> signals from the instruments and then at the
> optical network converting the signals to
> optical to be sent to the fixed ports."
> [page 3, lines 9-12]

First of all, this comment clearly has to be based upon hindsight since the applicants' teaching is the <u>only</u> suggestion of sending RF signals over an optical network to fixed radio ports in the context claimed.  Secondly, the "instruments" being referenced is not understood.  Finally, even if the "instruments" is taken to mean RF transceivers, there is no apparent necessary connection to be made between this statement and the just preceding statement.  In fact, to the extent that this statement can be understood, it stands diametrically opposed to the explicit teachings of <u>both</u> cited references.

The Examiner then goes on to state:

> "Also, there would inherently be
> radio/optical interfaces such as a matrix
> switch for selectively interconnecting the
> transceivers and the radio ports through the
> system."

It is respectfully submitted that there would <u>not</u> "inherently" be any sort of radio/optical interface in connection with a matrix switch anywhere in the cited references.  Indeed, the cited references teach directly away from any such centralized matrix switch at a radio/optical interface because they both expressly put the radio transceivers

NGP 000406

Exhibit D – Page 7

MOTLEY et al                    - 8 -
Serial No. 07/689,923

only at the remote radio port site itself--well _away_ from any

matrix switch.  Such could not be any further from applicants'

claimed system.

With respect to claims 3 and 4, whether Amitay uses time

division multiplexing or frequency division multiplexing in his

air-link is immaterial.  Applicants are certainly not claiming

to be the first to ever invent TDM or FDM.  However, applicants

are the first to use these techniques over RF links which extend

_both_ over an air link to-from fixed radio ports _and_ over an

optical fiber network extending from the fixed radio ports to a

base center having shared radio transceiver resources--which is,

of course, the context of claims 3 and 4.  35 U.S.C. §103

requires that claims 3 and 4 each be considered "as a whole"

when considering "obviousness."  Similar comments are applicable

for claims 8 and 9.

With respect to claims 6 and 7, the Examiner notes that

Barnes et al teaches a switch matrix at Figure 4 (102a and

102b), column 14, lines 54-69.  However, this cited passage

_itself_ clearly and explicitly notes that such switch matrices

are merely "conventional voice communications circuit switching

matrices."  In other words, they are the usual voice circuit

telephone switches.  Such switches clearly have _nothing_ to do

with switching at RF/optical interfaces so as to facilitate the

NGP 000407

MOTLEY et al                              - 9 -
Serial No. 07/689,923

use of shared RF transceiver resources at a central site (as do
claims 6 and 7 in the context of their parent claims).

   With respect to claims 10-12, the Examiner alleges that
Barnes et al teaches "holdover [sic: handover] between radio
ports" (citing column 20, lines 57-65 and column 23, lines
27-43) and "switching between two or more radial points in
matrix switching note column 16, line 44-52." As should be
apparent from even these cited passages, such handover switching
in Barnes et al is the usual conventional cellular telephone
switching which requires the sending of control signals over
circuits 28 to each of the involved cell stations so as to
disengage RF transceivers located at one cell station while also
engaging transceivers located at another cell station as the car
32 moves from one cell to the next. This is a far cry from cell
handover being controlled and effected entirely in the base
center itself by merely switching the radio frequency
transceiver (perhaps even the same RF transceiver) at the shared
resource base center site over to the next cell site (thus,
avoiding the need to send control signals out to each involved
remote cell station to switch locally situated RF transceiver on
and off as Barnes et al does over circuits 28).

   The rejection of claims 13-20 under 35 U.S.C. §103 on
Barnes et al in view of Amitay and Jannelli et al is also
respectfully traversed.

NGP 000408

Exhibit D – Page 9

MOTLEY et al                    - 10 -
Serial No. 07/689,923

Independent claims 13, 14 and 15 also each require an RF
communication link to extend <u>both</u> from fixed RF communication
ports over air links <u>and</u> over an optical fiber network.  For
reasons that have already been explained in detail, this claimed
feature alone makes these claims patentably distinct from any
possible teaching or suggestion of Barnes et al and/or Amitay.

The Jannelli reference clearly adds nothing of relevance
either.  Jannelli is concerned exclusively with conversion of
analog audio signals onto optical fiber in order to isolate them
from electrical interference.  The audio signal is digitized
into pulse width modulated optical signals for transmission down
the optical fiber and is then demodulated back to audio at the
other end.  There is no disclosure in Jannelli of modulating an
optical signals with an RF carrier -- let alone suggesting that
the RF carrier should be extended beyond the fiber end into an
air link.  Indeed, since the audio data is extracted from the
optical signal at the downstream end of the fiber, there would
appear to be very little point in even contemplating such.

The Examiner's comment at page 5 indicating that Jannelli's
audio signal "might be an RF signal" is not understood.  Clearly
there is a well known difference between audio signals and RF
signals.  In any event, in the context of applicants' claimed
invention, it is apparent that an audio signal is modulated onto
the RF carrier which is, in turn, (insofar as transmission over

NGP 000409

Exhibit D – Page 10

MOTLEY et al                    - 11 -
Serial No. 07/689,923

the optical fiber network is concerned) modulated onto an
optical carrier.  There is clearly no suggestion of this in
Jannelli.

     None of the three cited references in any way suggest the
applicants' claimed invention.  Rather, in all of these prior
art arrangements, insofar as they relate to cellular radio
telephone communications systems, the relevant RF signals are
generated at the remote cell station sites or "ports."  By
contrast, the applicants' claimed invention concentrates the RF
signal transceivers upstream at a central site (i.e., the "base
center").  RF carriers generated at the base center are then
sent to remote radio ports by RF modulated optical signals via
the optical fiber network.  The only "signal processing"
activity taking place at the radio ports is extraction of the
radio carrier signal from the optical carrier (so that the
extracted radio signal carrier may continue onwards and be
transceived via the air link to a mobile unit).  In effect, the
applicants' composite RF link between the mobile units and the
centrally located RF transceivers occurs in two stages:  (1) an
air link between the mobile unit and a fixed cell port and (2) a
"radio-over-fiber" network link between the fixed call port and
the RF transceiver(s).  In this sort of system, the fixed cell
port essentially only deeds to be a "dumb" relay.

NGP 000410

Exhibit D – Page 11

MOTLEY et al                    - 12 -
Serial No. 07/689,923

The applicants' novel system architecture permits centralized signal and data processing functions in the base center. Nevertheless, that base station is now capable of handling even more mobiles than if the links were radioed over air throughout because the fiber linked fixed ports can share RF frequency radio channels, transceivers can be shared between the ports, handovers can be effectuated entirely at the central base station site, etc. There are numerous significant advantages to the applicants' architecture--none of which are in the slightest way suggested by any of the cited references.

As to claims 16-20, these claims are dependent from independent claim 2 which has already been discussed above. The Jannelli reference adds absolutely nothing with respect to the added features of these claims either (especially when such dependent claims are considered "as a whole" as they must be under 35 U.S.C. §103).

The Examiner has reminded the undersigned to "argue the subject matters of the claims." Indeed, the claimed subject matter is what is relevant in this case. If the undersigned's arguments are not considered reflective of the claimed subject matter, the Examiner is requested to point out where this is allegedly so. Certainly the arguments are believed to be reflective of the claimed subject matter.

NGP 000411

Exhibit D – Page 12

MOTLEY et al                    - 13 -
Serial No. 07/689,923

As should be clearly apparent by now the claimed subject matter in this case requires, inter alia, an RF carrier communication link which extends via air between a mobile unit and a fixed radio port and then continues on an optical carrier via a optical fiber network upstream to a centralized base center having shared RF transceiver resources.  Even if it be assumed arguendo that features from any of the cited references can be "bodily incorporated into the other"--no such substitution produces the claimed subject matter (let alone make it "obvious to one of ordinary skill in the art").

Accordingly, this entire application is believed to be in allowable condition and a formal notice to that effect is respectfully solicited.

Respectfully submitted,

NIXON & VANDERHYE P.C.

By: _____
Larry S. Nixon
Reg. No. 25,640

LSN:lsp
1100 North Glebe Rd.
8th Floor
Arlington, VA 22201-4714
703-816-4000

NGP 000412