JEFFREY A. MILLER (STATE BAR NO. 160602)
jmiller@orrick.com
JASON S. ANGELL (STATE BAR NO. 221607)
jangell@orrick.com
JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     +1-650-614-7400
Facsimile:     +1-650-614-7401

Attorneys for Plaintiff
NEXTG NETWORKS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NEXTG NETWORKS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEWPATH NETWORKS, L.L.C., a New Jersey limited liability Corporation,<br><br>Defendant. | Case No.  C-08-01565-VRW<br><br>**PLAINTIFF NEXTG NETWORK, INC.'S REPLY TO NEWPATH'S NETWORK, INC.'S OPPOSITION TO MOTION TO STRIKE, MOTION TO DISMISS, AND ANTI-SLAPP MOTION**<br><br>Date:     September 11, 2008<br>Time:    2:30 p.m.<br>Judge:   Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

Page

I. NEWPATH CONFIRMS THAT ITS STATE LAW CLAIMS ARE BASED ON CONDUCT PROTECTED BY CALIFORNIA'S LITIGATION PRIVILEGE ................ 1

    A. There Is No Sham Litigation Exception To Either The California Or Washington Litigation Privileges ................................................................ 1

        1. The California Litigation Privilege Is Absolute ........................................ 2

        2. The Washington Litigation Privilege Is Also Absolute ............................. 2

    B. NewPath's State Law Claims Must Be Dismissed ................................................ 3

    C. NewPath's Counterclaim for Negligent Interference Also Fails Because NextG Did Not Owe NewPath A Duty Of Care ...................................................... 3

    D. The Court Should Strike NewPath's Allegations Of "Fraudulent" Conduct .......... 4

        1. The Allegedly Challenged Acts Do Not State A Claim For Fraud ............. 4

        2. NewPath Does Not Satisfy Rule 9(b) ......................................................... 5

        3. The Amendments NewPath Proposes Are Futile ....................................... 6

II. THE COURT SHOULD STRIKE NEWPATH'S INEQUITABLE CONDUCT ALLEGATIONS .................................................................................................................. 7

III. NEWPATH HAS NOT ALLEGED SUFFICIENT FACTS FOR A FINDING OF PATENT MISUSE ................................................................................................................. 7

IV. NEWPATH'S COUNTERCLAIMS SHOULD BE STRICKEN PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE .................................................................... 10

V. NEWPATH IS NOT ENTITLED TO ADDITIONAL DISCOVERY BEFORE ITS COUNTERCLAIMS ARE DISMISSED .......................................................................... 12

1

## TABLE OF AUTHORITIES

2

**Page**

3

**FEDERAL CASES**

4

*Aventis Pharma S.A.* v. *Amphastar Pharmaceuticals, Inc.*,
    525 F.3d 1334 (Fed. Cir. 2008) .................................................................................................. 6

5

*C.R. Bard* v. *M3 Sys.*, 157 F.3d 1340 (Fed. Cir. 1998) ....................................................................... 8

6

*Catch Curve, Inc.* v. *Venali, Inc.*,
    519 F. Supp. 2d 1028 (C.D.Cal. 2007) ............................................................................ 1, 13, 14

7

8

*Glaverbel Societe Anonyme* v. *Northlake Mktg. & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995).] .......................................................................................... 9, 10

9

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ............................................................ 5

10

*Hydril Co. LP* v. *Prideco LP*, 474 F.3d 1344 (Fed. Cir.) .................................................................. 5

11

*In re Independent Service Organizations Antitrust Litigation*,
    964 F. Supp. 1479 (D. Kan 1997) ........................................................................................... 8, 9

12

13

*Mallinckrodt, Inc.* v. *Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992) ................................................ 8

14

*Metabolife Int'l, Inc.* v. *Wornick*, 264 F.3d 832 (9th Cir. 2001) .................................................... 13

15

*Microsoft Corp.* v. *BEC Computer Co., Inc.*, 818 F. Supp. 1313 (C.D.Cal. 1992) ......................... 2

16

*Odom* v. *Microsoft Corp.*, 486 F.3d 51 (9th Cir. 2007) .................................................................... 5

17

*Oestreicher* v. *Alienware Corp.*, 544 F. Supp. 2d 964 (N.D.Cal. 2008) .......................................... 5

18

*Rasidescu* v. *Midland Credit Management, Inc.*,
    435 F. Supp. 2d 1090 (S.D.Cal. 2006) ....................................................................................... 5

19

*Walker Process Equip. Inc.* v. *Food Machinery & Chemical Co.*,
    382 U.S. 172 (1965) .................................................................................................. 5, 6, 9

20

21

*Wight* v. *BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) .............................................................. 6

22

*Zenith Electronics Corp.* v. *Elo Touchsystems, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) .................................................................................................. 8

23

**STATE CASES**

24

*A.F. Brown Elec. Contr.* v. *Rhino Electric Supply, Inc.*,
    137 Cal. App. 4th 1118 (2006) .................................................................................................. 2

25

26

*Action Apartment Ass'n. Inc.* v. *City of Santa Monica*, 41 Cal. 4th 1232 (2007) ........................... 2

27

*Brown* v. *Safeway Stores, Inc.*, 94 Wash. 2d 359, 617 P.2d 704 (Wash. 1980) .......................... 1, 2

28

# TABLE OF AUTHORITIES
(continued)

**Page**

*Contemporary Services Corp.* v. *Staff Pro Inc.*, 152 Cal. App. 4th 1043 (2007) ...................... 2, 11

*Hagberg* v. *California Federal Bank FSB*, 32 Cal. 4th 39 (2004).................................................. 2

*J'Aire Corp.* v. *Gregory*, 24 Cal. 3d 799 (1979) ...................................................................... 3, 4

*Kauzlarich* v. *Yarbrough*, 105 Wash. App. 632, 20 P.3d 946 (Wash. 2001)................................ 3

*McClure* v. *Stretch*, 20 Wash. 2d 460, 147 P.2d 935 (1944) ...................................................... 2

*McNeal* v. *Allen*, 95 Wash. 2d 265, 621 P.2d 1285 (Wash. 1980)............................................... 3

*Navarrow* v. *IHOP Properties, Inc.*, 134 Cal. App. 4th 834 (Cal.App. 2006) ............................ 11

*Neville* v. *Chudacoff* , 160 Cal. App. 4th 1255 (2008) ................................................................ 2

*Stolz* v. *Wong Communications, Ltd. P'ship*, 25 Cal. App. 4th 1811 (1994) ............................ 3, 4

*Sunset Millennium Assoc.* v. *LHO Grafton Hotel*, 146 Cal. App. 4th 300 .................................. 11

*Vega* v. *Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282 (2004) .......................................... 5

## FEDERAL STATUTES

35 U.S.C. § 271(d) ...................................................................................................................... 8

35 U.S.C. §271(d)(3)................................................................................................................... 8

Fed.R.Civ.P. 11 .................................................................................................................... 10, 13

New Path Networks, LLC's ("NewPath") opposition demonstrates that NextG Networks, Inc.'s ("NextG") motion should be granted. NewPath has been unable to show that its state law counterclaims are not foreclosed by the California and/or Washington litigation privileges. NewPath's fraud claim is hopelessly vague and NewPath's attempt to salvage these allegations makes clear that NewPath has not pleaded the required elements to support a fraud allegation. In any case, NewPath's state law claims are properly stricken under California's anti-SLAPP statute. NewPath has apparently abandoned any inequitable conduct claim, and its misuse allegations are barred by statute or otherwise do not state a claim for patent misuse. Finally, NewPath's request for discovery prior to having its challenged claims and allegations stricken or dismissed is irrelevant and cannot remedy NewPath's deficient pleading. For these, the reasons that follow, and the reasons stated in NextG's opening papers, NextG's motion should be granted.

## I. NEWPATH CONFIRMS THAT ITS STATE LAW CLAIMS ARE BASED ON CONDUCT PROTECTED BY CALIFORNIA'S LITIGATION PRIVILEGE

NewPath's opposition confirms that its state law claims are based solely on the fact that NextG filed what NewPath characterizes as an "objectively baseless" lawsuit and made threats of litigation. As will be seen, this means that the California litigation privilege applies and that NewPath's state law claims should be dismissed.

### A. There Is No Sham Litigation Exception To Either The California Or Washington Litigation Privileges

In its opposition, NewPath made no attempt to distinguish *any* of the cases NextG cited holding that the litigation privilege is absolute, applies in this case and bars NewPath's state law claims. Instead, NewPath invents a new legal standard, arguing that "both California and Washington recognize exceptions to the privilege for sham litigation." NewPath cites *Catch Curve*, *Inc. v. Venali, Inc.* 519 F.Supp.2d 1028 (C.D.Cal. 2007), and *Brown v. Safeway Stores, Inc.*, 94 Wash 2d 359, 617 P.2d 704 (Wash. 1980), in support of this proposition. Neither of these cases support NewPath. In fact, neither *Catch Curve* nor *Brown* even address their state's respective litigation privileges, meaning that neither case has any relevance here. In *Catch Curve,* because the court concluded that if the litigation constituted a sham, it would not grant the defendant's anti-SLAPP motion. *See id.* at 1039. In *Brown,* the court never even had to consider the litigation

- 1 -

1  privilege, as it did not find anything improper about the allegedly unlawful activity. *Brown*, 94
2  Wash 2d at 375, 617 P.2d at 713. Despite this, NewPath argues that *Brown* "imposes a good faith
3  requirement" on the litigation privilege. Opp. at 15. NewPath is plainly wrong, as all Brown held
4  was that a tortious interference claim did not exist when there was good faith.

5          **1.     The California Litigation Privilege Is Absolute**

6        Contrary to NewPath's assertions, there is no sham litigation exception to the California
7  litigation privilege. *See A.F. Brown Elec. Contr. v. Rhino Electric Supply, Inc.,* 137 Cal.App.4th
8  1118, 1126 (2006) ("The litigation privilege is absolute; it applies, if at all, regardless of whether
9  the communication was made with malice or the intent to harm."); *see also Action Apartment*
10 *Ass'n. Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241 (2007) ("This privilege is absolute in
11 nature, applying 'to *all* publications, irrespective of their maliciousness.'" (emphasis in original)).
12 Indeed, "even the filing of improper or meritless pleadings, with an ulterior purpose, is privileged
13 and does not constitute abuse of process." *Microsoft Corp. v. BEC Computer Co., Inc*., 818
14 F.Supp. 1313, 1319 (C.D.Cal. 1992).. Likewise, NextG's alleged threats are also privileged.
15 *Neville v. Chudacoff* , 160 Cal.App.4th 1255, 1266 (2008).

16       The only exception to California's litigation privilege is a cause of action for malicious
17 prosecution. *See Hagberg v. California Federal Bank FSB*, 32 Cal.4th 39 (2004). To assert a
18 cause of action for malicious prosecution, NewPath would have to allege (1) a favorable
19 determination of the merits of the underlying action, (2) which was brought without probable
20 cause, and (3) which was initiated with malicious intent. *See Contemporary Services Corp. v. Staff*
21 *Pro Inc.*, 152 Cal.App.4th 1043, 1056 (2007). Given that NewPath has not come anywhere close
22 to winning this case, it has no malicious prosecution cause of action.

23         **2.     The Washington Litigation Privilege Is Also Absolute**

24      As NextG discussed in opening memorandum, the California litigation privilege applies in
25 this case under conflict of laws principals. NewPath did not challenge this point. But even if
26 Washington law applied, it would not change anything, as the Washington litigation privilege is
27 also absolute. *See McClure v. Stretch*, 20 Wash.2d 460, 465, 147 P.2d 935 (1944) ("'All charges,
28 allegations, and averments contained in regular pleadings addressed to and filed in a court of

competent jurisdiction, which are pertinent and material to the redress of relief sought, whether legally sufficient to obtain it or not, *are absolutely privileged.*' ") (emphasis in original)); *McNeal v. Allen*, 95 Wash.2d 265, 267, 621 P.2d 1285 (Wash. 1980) (holding that statements made during the course of a judicial proceeding are absolutely privileged if pertinent or material to the redress or relief sought); *see also Kauzlarich v. Yarbrough*, 105 Wash.App. 632, 641-642, 20 P.3d 946 (Wash. 2001).

### B. NewPath's State Law Claims Must Be Dismissed

Because the California and Washington litigation privileges are absolute, NewPath's state law claims based on NextG's filing of an allegedly "objectively baseless" lawsuit and alleged threats of same are barred by California's litigation privilege. Thus, the Court should dismiss Counts IV (intentional interference), V (negligent interference) and VI (unfair competition under California Business & Professions Code Section 17200).

### C. NewPath's Counterclaim for Negligent Interference Also Fails Because NextG Did Not Owe NewPath A Duty Of Care

Even if NextG's actions were not privileged, which they are, NewPath still has not stated a claim for negligent interference because it has not and cannot allege a special relationship giving rise to a duty of care owed by the defendant to the plaintiff. As a matter of law of law, there can be no special relationship between competitors. *See Stolz v. Wong Communications, Ltd. P'ship*, 25 Cal.App.4th 1811, 1825 (1994)

Surprisingly, NewPath ignores the holding in the case it identifies as the "correct case" for identifying the factors for determining whether NextG owed NewPath a duty of care. Opp. at 15:24-25. NextG cited *Stolz* to demonstrate that competitors do not owe each other duty of care. NewPath cites *Stolz* for the factors relevant to a determination of a duty of care between competitors, but makes no mention of *Stoltz's* holding:

> The tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care. *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 803 (1979). The complaint did not allege such a duty, nor could it, since it was plain that plaintiff and defendants were competitors.

*Id*. at 1825 (emphasis in original). Instead of attempting to distinguish *Stolz*, NewPath argues that

- 3 -

1  the test for determining whether a duty of care exists is outlined in *J'Aire Corp. v. Gregory*, 24
2  Cal.3d 799 (1979). NewPath makes no effort to reconcile *J'Aire* with *Stoltz*, or provide any
3  explanation as to why the rule from *Stoltz* that competitors owe each other no duty of care does not
4  apply in this case. *Stolz*, 25 Cal.App.4th at 1825. Indeed, *J'Aire* did not involve a duty among
5  competitors at all.

6  Notwithstanding NewPath's arguments as to why a special relationship might conceivably
7  exist between NextG and NewPath, nowhere in its counterclaim does NewPath even allege that a
8  special relationship exists, and it could not so allege because no such relationship exists. As such,
9  its counterclaim for negligent interference must fail.

10 **D.    The Court Should Strike NewPath's Allegations Of "Fraudulent" Conduct.**

11  Even if NewPath's section 17200 counterclaim is not subject to the California litigation
12  privilege, the Court should still strike the allegations of "fraudulent" conduct appearing in
13  paragraphs 162 and 165 of Count VI of its counterclaims. NextG moved to strike under Rule 9(b)
14  because the fraud allegations were so vague and non-specific that NextG had no idea what the
15  alleged fraud is. As it turns out, NewPath's opposition makes it clear that it has not only run afoul
16  of Rule 9(b), but that there is no basis to support any allegations of fraud.

17 **1.    The Allegedly Challenged Acts Do Not State A Claim For Fraud**

18  NewPath argues that NextG's alleged fraud was that "NextG filed the present lawsuit with
19  knowledge that the claims of the patent-in-suit could not be construed to cover any of NewPath's
20  systems and with the improper purpose of interfering with NewPath's business and existing and
21  potential business relationships." Opp. at 11:26-12:1. NewPath also alleges in the Kavanagh
22  declaration that unspecified NextG personnel told unspecified potential and actual customers that
23  NextG had a patent and that NextG was the only one who could provide distributed antenna
24  systems. Mr. Kavanagh also declares that unspecified NextG personnel told unspecified customers
25  at a trade show that NewPath infringed and that it sued NewPath. Opp. at 12:11-20.

26  Putting aside the fact that Mr. Kavanagh's declaration recites nothing but hearsay and
27  should be stricken, neither it nor any allegation in NewPath's counterclaims or opposition make out
28  the requisite elements of fraud. The elements of fraud under California law are "'(1)

1  representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and
2  resulting damage (causation).'" *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282,  291
3  (2004).  NewPath's non-specific and vague hearsay allegations fail to satisfy any of these
4  requirements, as NewPath never explains how filing a lawsuit or making threats of litigation satisfy
5  any of these requirements, let alone all of them.  At a minimum, there could be no detrimental
6  reliance by anyone, let alone NewPath, and NewPath alleges no detrimental reliance.

### 2.     NewPath Does Not Satisfy Rule 9(b)

8  Even if the filing of this lawsuit and the allegedly false statements NextG made regarding
9  its patent and this lawsuit can somehow satisfy the elements of a fraud claim, NewPath has still not
10  satisfied Rule 9(b)'s heightened pleading requirement.  Rule 9(b) requires NewPath to state
11  precisely the time, place, and nature of NextG's alleged statements that NewPath alleges were
12  fraudulent.  *See Oestreicher v. Alienware Corp.* 544 F.Supp.2d 964, 968 (N.D.Cal. 2008) (citing to
13  *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994)); *see also Rasidescu v. Midland*
14  *Credit Management, Inc.,* 435 F.Supp.2d 1090, 1095 (S.D.Cal. 2006).  NewPath's counterclaims
15  do not do any of this, as all NewPath does is make non-specific allegations of alleged threats of
16  litigation.

17  The cases on which NewPath relies are inapposite.  *Odom v. Microsoft Corp.,* 486 F.3d 51
18  (9th Cir. 2007), was a wire fraud case against Microsoft and Best Buy for unauthorized internet
19  service charges.  In *Odom*, the court held that the plaintiff did not have to plead the name of the
20  specific employee who scanned the barcode that led to the charges since there was no dispute that
21  the barcodes were scanned.  Because of this, knowing the name of the employee who scanned the
22  barcode would not hamper Microsoft's or Best Buy's ability to prepare an adequate defense.  In
23  contrast, NextG has no idea who allegedly made the statements NewPath complains of and to
24  whom the alleged threats were made.  In fact, NextG believes NewPath's allegations are false.
25  Regardless, NextG has no way of preparing its defense to the NewPath's vague fraud claims
26  without the specificity required by Rule 9(b).

27  *Hydril Co. LP v. Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir.), is equally off-point since it
28  was related to a *Walker Process* antitrust claim.  The "fraud" in a *Walker Process* claim is

1  inequitable conduct before the Patent Office. *Walker Process Equip. Inc. v. Food Machinery &*
2  *Chemical Co.*, 382 U.S. 172, 174 (1965). Given that NewPath admits it has no inequitable conduct
3  case (Opp. at 8:21-22), it cannot have a *Walker Process* claim. Further, *Aventis Pharma S.A. v.*
4  *Amphastar Pharmaceuticals, Inc.*, 525 F.3d 1334 (Fed. Cir. 2008), had nothing to do with the
5  sufficiency of fraud allegations under Rule 9(b), but rather what evidence was necessary to
6  establish an intent to deceive for inequitable conduct. *See id.* at 1343. *Wight v. BankAmerica*
7  *Corp.,* 219 F.3d 79 (2d Cir. 2000), addressed Rule 9(b) in the context of allegations for aiding and
8  abetting fraud. *See id.* at 91. *Wight* held that Rule 9(b) was satisfied because the rule does not
9  require enhanced pleading for intent, which is what was at issue there. *Wight* is inapplicable since
10 the problems with NewPath's pleading regarding NextG's alleged threats have nothing to do with
11 intent.

### 3.     The Amendments NewPath Proposes Are Futile

13    NewPath's proposed amendments would not remedy the deficient pleadings. Adding
14 allegations that NextG advised customers that it owned a patent relating to distributed antenna
15 systems and that it was the only one that could provide that type of service does not address the
16 concerns raised by NewPath's failure to plead the elements necessary for a fraud claim, or the
17 specificity required by Rule 9(b). The same is true regarding the allegation that NextG advised
18 customers at a CTIA trade show that NewPath infringed on NextG's patent and that NewPath had
19 been served with a lawsuit.

20    These allegations do not add any specificity to NewPath's allegation of fraudulent conduct.
21 For example, the proposed amendments do not identify who at NextG made the alleged statements
22 or which customers NextG supposedly made the alleged statements to. Likewise, other than the
23 trade show, the proposed amendments do not specify the time and place of the alleged statements.
24 Indeed, even if the Court were to grant NewPath leave to amend, its proposed amendments would
25 still not make out the elements of a fraud claim. As just one example, the proposed amendments
26 still do not provide any basis for a finding of reliance.[1]

---

[1] Parsing the carefully worded Kavanagh declaration, one sees that the statements of fact NextG alleged made are true. NextG does own patents related to distributed antenna systems and it did file a lawsuit against NewPath. There is nothing false about these statements. The other alleged

- 6 -

NEXTG NETWORK, INC.'S REPLY TO NEWPATH'S
NETWORK, INC.'S OPPOSITION
C-08-01565-VRW

**II.    THE COURT SHOULD STRIKE NEWPATH'S INEQUITABLE CONDUCT ALLEGATIONS.**

NewPath makes specific reference to "inequitable conduct" in paragraph 119 of its counterclaims and makes factual allegations regarding a failure to disclose information to the Patent Office during prosecution of the patent-in-suit in paragraphs 75-78. Thus, it certainly appears that NewPath was attempting to plead the affirmative defense of inequitable conduct. Likewise, Count III of NewPath's counterclaims seeks a declaration of patent unenforceability. In so pleading, Count III incorporated all preceding paragraphs, including NewPath's allegations of inequitable conduct (¶119) and failure to disclose information to the Patent Office during prosecution (¶75-78).

In its opposition, NewPath admits that it has not pleaded facts sufficient to support a claim or defense of inequitable conduct. Indeed, in its opposition, NewPath disclaimed any theory of inequitable conduct based on prosecution of the patent in suit, or any other conduct before the Patent Office." Opp. at 8-9. Accordingly, the "inequitable conduct" allegation in ¶119 and the allegations in ¶75-78 are irrelevant and should be stricken as immaterial and impertinent matter. *See e.g.*, Rule 12(f).

In an attempt to save these paragraphs, NewPath' argues that ¶75-78 pertain to the "objective reasonableness of NextG's infringement allegations" and NextG's alleged bad faith (see Opposition, 9:16-21). NewPath's argument is devoid of merit, as NewPath does not explain how the information allegedly withheld from the Patent Office relates to this lawsuit. Either the withheld information gives rise to inequitable conduct or it does not. Since NewPath admits that the allegations at ¶75-78 do not give rise to inequitable conduct, the allegations are irrelevant. They should be stricken.

**III.   NEWPATH HAS NOT ALLEGED SUFFICIENT FACTS FOR A FINDING OF PATENT MISUSE.**

NextG explained in its motion that NewPath's patent misuse defense and counterclaim for a

---

statements, even if made, are not statements of fact that could be fraudulent. Whether or not NextG is the only company that can supply distributed antenna systems is plainly an opinion that involves far more than just NextG's patent position. Likewise, whether NewPath infringes is not a statement of fact.

1  declaratory judgment of unenforceability based on patent misuse were legally insufficient because
2  they are based on NextG's filing of this lawsuit, and thus are barred by 35 U.S.C. §271(d)(3).  This
3  section provides that "no patent owner otherwise entitled to relief for infringement . . . shall be . . .
4  deemed guilty of patent misuse or illegal extension of the patent right by reason of his having . . .
5  sought to enforce his patent rights against infringement."  35 U.S.C. § 271(d).  Paraphrasing a 1997
6  case from the District of Kansas, NewPath asserts that this statutory bar to a misuse defense does
7  not apply in a situation in which the patent infringement case is "(1) objectively meritless and (2)
8  brought in an attempt to directly interfere with the business of his competitor."  Opp. at 14 (citing
9  *In re Independent Service Organizations Antitrust Litigation*, 964 F. Supp. 1479, 1485 (D. Kan
10 1997) ("*ISO*")).  Contrary to NewPath's assertions, these are not the "elements of misuse."
11 NewPath's argument is based on a misunderstanding of patent misuse and incorrect statutory
12 interpretation.[2]

13         The classic formulation of the doctrine of patent misuse is a situation in which "the patentee
14 has impermissibly broadened the scope of the patent grant with anticompetitive effect," although
15 "misuse may arise when the conditions of antitrust violation are not met."  *C.R. Bard v. M3 Sys.,*
16 157 F.3d 1340, 1373 (Fed. Cir. 1998); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed.
17 Cir. 1992) ("The concept of patent misuse arose to restrain practices that did not in themselves
18 violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed
19 to be contrary to public policy.").  Section 271(d) provides certain statutory bars to patent misuse
20 liability, such as enforcement of patent rights (§271(d)(3)) and refusal to license (§271(d)(4)).

21         However, NewPath confuses the statutory bar against misuse liability with the notion that
22 one who is not entitled to the protections of section 271(d) is necessarily guilty of patent misuse.
23 In other words, NewPath argues that one whose actions are not entitled to First Amendment or
24 other statutory protections for its actions because they are "objectively baseless" is necessarily
25 liable for patent misuse.  This is not what section 271(d) says or requires, and the authority on

---

[2] The only other case NewPath cites in the context of patent misuse is *Zenith Electronics Corp. v. Elo Touchsystems, Inc.,* 182 F.3d 1340 (Fed. Cir. 1999).  However, *Zenith* is not a patent misuse case, but rather discusses whether the Patent Act bars claims under the Lanham Act under the facts of that case.  *Id.* at 1352-54.

which NewPath relies does not compel a finding that NewPath has stated a claim for patent misuse.

*ISO*, the case on which NewPath relies in support of its effort to preserve its misuse defense and counterclaim, says nothing to the contrary. In its discussion of misuse immunity under section 271(d)(3), *ISO* merely recognizes that a "finding of misuse is precluded, however, only if the patent infringement suit is brought in good faith." *ISO*, 964 F. Supp. at 1484. In the portion cited by NewPath, the court elaborates that "A patent holder's access to the courts therefore is immunized unless his lawsuit is (1) objectively meritless and (2) brought in an attempt to interfere directly with the business of his competitor." *Id.* at 1485. Both of these citations demonstrate that *ISO* does no more than recognize the protections afforded by the principles announced in, for example, *Noerr* and *PRE*, as well as section 271(d)(3). In any event, with limited analysis, the *ISO* court found that the defendant's misuse defense was precluded as a matter of law because the plaintiff's claims were not "objectively baseless." *Id.* 1484-85.

*ISO* does not create a new basis for a patent misuse defense. Bringing an "objectively baseless" claim for patent infringement with the intent to interfere with the business of a competitor may provide a basis under another theory of liability,[3] but it does not amount to patent misuse. If *ISO* could be read to authorize a patent misuse defense based on "objectively baseless" patent infringement claims, it appears to be an anomalous opinion. The only case *ISO* cites in support of its discussion of patent misuse is *Glaverbel*, which appears to have been misinterpreted by the *ISO* court. *Id.* ("the only authority offered by the parties on this point applied an identical analysis to determine whether a lawsuit constituted patent misuse or an antitrust violation." *See Glaverbel[ Societe Anonyme v. Northlake Mktg. & Supply, Inc*., 45 F.3d 1550, 1558-59 (Fed. Cir. 1995).]).

In *Glaverbel*, Northlake asserted that Glaverbel violated Sherman Act sections 1 and 2 and misused its patents by bringing and continuing the lawsuit in bad faith and for an improper purpose. *Id*. at 1558. In a discussion that did not distinguish patent misuse and antitrust violations, the court stated that the "bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be *bad faith* and *improper purpose* in

---

[3] *E.g., Walker Process Equip. Inc. v. Food Machinery & Chemical Co*., 382 U.S. 172 (1965).

bringing the suit, *in implementation of an illegal restraint of trade.*" *Id.* (emphasis added). The court explained that "a purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging in the litigation process itself, regardless of the outcome." *Id.* The Federal Circuit affirmed the district court's finding that "Northlake had not met its burden of demonstrating bad faith and improper purpose in bringing this infringement suit," and the other elements of patent misuse and antitrust violations were not discussed. *Id.* at 1559.

*Glaverbel* is not a model of clarity. However, to the extent it identifies "elements" of patent misuse in the bad faith infringement context (which cannot be conclusively determined, given the combined antitrust and misuse discussion), it further requires an "improper purpose" "in implementation of an illegal restraint of trade." At a minimum, NewPath cannot satisfy the "improper purpose" requirement, as NewPath has no Rule 11 basis for any contention that NextG's "goal is not to win a favorable judgment" in this litigation. Likewise, NewPath does not and could not allege an illegal restraint of trade.

Finally, as a matter of logic, it makes little sense to recognize a patent misuse defense based on "objectively baseless" patent infringement claims, as purportedly alleged by NewPath. The reason is simple: The remedy for patent misuse, as NewPath explains in its papers, is unenforceability of the patent in suit. If NextG's patent infringement claims are truly "objectively baseless," then NewPath does not infringe. If NewPath does not infringe, there are no patent rights to enforce against NewPath.

### IV. NEWPATH'S COUNTERCLAIMS SHOULD BE STRICKEN PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE

NewPath argues that its counterclaims target ***commercial*** speech (as opposed to *protected* speech), which falls under an exception to the SLAPP statute found at California Code of Civil Procedure Section 425.17(c). NewPath misapprehends what constitutes commercial speech under the exception. Under Section 425.17(c), the anti-SLAPP statute does not apply to:

> any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services … arising from any statements or conduct by that person if both of the following conditions exists:

> (1) [t]he statement or conduct consists of representations of fact about that person's or business competitor's business operations, goods, or services, that is made for the securing sales of lease of or commercial transactions in, the person's good or services, or the statement or conduct was made in the course of delivering the person's good or services. *[and]* ….
>
> (2) [t]he intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

An anti-SLAPP motion can ***only be denied*** under Section 425.17(c) when both elements are met. *See Contemporary Services Corp. v. Staff Pro., Inc.,* 152 Cal.App.4th 1043, 1053 (Cal.App. 2007); *see also, Sunset Millennium Assoc. v. LHO Grafton Hotel,* 146 Cal.App.4th 300, 312; *Navarrow v. IHOP Properties, Inc.,* 134 Cal.App.4th 834, 840 (Cal.App. 2006)(review den'd). Accordingly, California courts have consistently refused to apply Section 425.17 when the alleged communications were not about an person or his competitor's business operations, goods, or services. The court in *Contemporary Services Corp.,* for example, held that Section 425.17 was inapplicable to emails sent by a defendant to individuals who had participated in the litigation to update them on its status. *See id.* At 1054. At issue in that case were emails from the defendant to actual and potential customers that had some involvement in the litigation. *See id.* At 1050. The appellate court ultimately reasoned that although the defendant was engaged in the selling of service within Section 425.17(c) and that its communications were directed at actual or potential customers, Section 425.17(c) would not apply because the emails did not contain statements about the defendant's or plaintiff's business operations, goods, or services:

> The email, however, did not contain statements regarding defendants' or plaintiffs' "business operations, goods, or services." The e-email is certainly critical of plaintiffs' litigation tactics and provides a summary of what had transpired in the Los Angeles action. But plaintiffs are "primarily engaged" in the business of providing even staffing services; they are not in the "business" or litigating claims against defendants. The record shows the e-mail was sent in order to "set the record straight" with regard to plaintiffs' allegations against the defendants and not to obtain approval for, promote, or secure business for defendants' event staffing services.

*See id.* at 1054.

Similarly, the court in *Sunset Millennium Assoc. v. LHO Grafton Hotel*, 146 Cal.App.4th

1  300 (2006) concluded that Section 425.17(c) did not apply to statements made by a defendant hotel
2  during a city council meeting regarding the environmental impact of a plaintiff's hotel. *See id.* at
3  312-13. In holding such, the court reasoned the statements made to "forestall environmental
4  approval of the plaintiff's 2004 project" were not for the purpose of promoting the defendant's
5  hotel's good or services: "Defendant operates a hotel-it is not an environmental consulting agency
6  or public interest group dedicated to protection of the city's ecosystem." *Id.*

7  Based on the allegations in its counterclaims, NewPath cannot establish that Section
8  425.17(c) applies. First , the alleged communications do not make a representation of fact
9  concerning either NextG's or NewPath's business operation or goods. Rather, the alleged
10  communications – *i.e.,* NextG's complaint alleging patent infringement and NextG's statements
11  about NewPath's alleged infringement – take a legal position with respect to NewPath's conduct.
12  Neither NextG nor NewPath are in the business of issuing patents or legal advice, and as such,
13  communications stating their legal position are not subject to Section 425.17(c). Likewise, in the
14  context of the litigation itself, the intended audience for the lawsuit is this Court, not any
15  customers. Therefore, the second prong of the exception, Section 425.17(c)(2), is not met.

16  Because NewPath's counterclaims arise from conduct in the furtherance of NextG's right of
17  petition and because Section 425.17(c) does not apply, NextG has established a prima facie case
18  that NewPath's counterclaims target conduct in the furtherance of NextG's right of petition.
19  Accordingly, NewPath's counterclaims are properly subject to an anti-SLAPP motion. Moreover,
20  NewPath has not and cannot meet its burden of showing success on the merits. Because
21  NewPath's state counterclaims are barred by California's litigation privilege, NewPath simply
22  cannot come forward with any facts that will breath life into its state law counterclaims. As such,
23  the Court should grant NextG's anti-SLAPP motion and strike NewPath's counterclaims for
24  intentional interference, negligent interference, and unfair competition.

25  **V.   NEWPATH IS NOT ENTITLED TO ADDITIONAL DISCOVERY BEFORE ITS COUNTERCLAIMS ARE DISMISSED**
26
27  NewPath argues that it needs to see NextG's infringement contentions so it can determine
28  the basis for NextG's infringement allegations. It also argues that it needs discovery to learn about

1  the alleged statements NextG made to potential customers. The discovery to which NewPath

2  argues it is entitled – *i.e.,* NextG's infringement contentions and the extent of NextG's alleged

3  misrepresentations to potential customers – will not aid NewPath in addressing NextG's motion,

4  which is attacking the sufficiency of NewPath's pleading. NextG's motion targets NewPath's

5  defenses and counterclaims that are premised on NextG's filing of this lawsuit and NextG's alleged

6  threats of litigation. Since California's litigation privilege precludes these claims, no amount of

7  discovery will save NewPath.

8  NewPath's reliance on *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) and

9  *Catch Curve, supra*, is misplaced. *Metabolife* held that despite the district court's stay of discovery

10  pursuant to the anti-SLAPP statute and the defendants' refusal to engage in discovery pending the

11  outcome of their anti-SLAPP motion, the plaintiff was nonetheless entitled to limited discovery on

12  information need to support its opposition to the defendants' summary judgment motion. *See id.* at

13  846. The circumstances here, however, are markedly different. In *Metabolife*, the determination of

14  the anti-SLAPP motion – which attacked claims for defamation, libel, and slander – turned on

15  whether the plaintiff could make a prima facie evidentiary showing of the falsity of the statements.

16  *See id.* at 839. In complete contrast, as discussed above, the determination of NextG's anti-SLAPP

17  motion turns on the applicability of California's litigation privilege, which is not fact driven. One

18  can assume the truth of NewPath's allegations in its counterclaims and they still fail as a matter of

19  law.[4]

20  *Catch Curve* is equally inapposite, as it does not even address whether a continuance so that

21  the plaintiff can take discovery in the context of an anti-SLAPP motion is appropriate. Rather, in

22  the context of determining whether the sham litigation exception to the *Noerr-Pennington* doctrine

---

23  [4] NewPath's argument that it needs a continuance until the discovery contemplated by the Patent
24  Local Rules has been completed is baseless. First, NewPath implies that NextG has refused to
provide its infringement contentions. This is false. NextG's infringement contentions are not due
25  until September 22. Second, NewPath also claims that NextG has not produced documents
responsive to NewPath's request. This is misleading, as NextG has agreed to produce documents
26  and is in the process of locating, processing, and preparing the documents for production. In fact,
until receiving NewPath's opposition, NextG was unaware of any issues with its document
27  production since NewPath has never requested a meet and confer on this issue. Regardless of all
this, NextG's motion tests NewPath's pleadings. No discovery is necessary or appropriate to do
28  that since NewPath was supposed to have a good faith basis for its defenses and counterclaims
before it filed them. See Fed.R.Civ.P. 11.

- 13 -

NEXTG NETWORK, INC.'S REPLY TO NEWPATH'S
NETWORK, INC.'S OPPOSITION
C-08-01565-VRW

would apply, *Catch Curve* reasoned that such a determination could be better made after the claim construction hearing. *See supra,* 519 F.Supp.2d at 1037. Obviously, this is inapplicable because NextG's motion is not based on the California litigation privilege, not the *Noerr-Pennington* doctrine.

Dated: August 14, 2008

Orrick, Herrington & Sutcliffe LLP

/s/ Jeffrey A. Miller /s/
JEFFREY A. MILLER
Attorneys for Plaintiff
NextG Networks, Inc.

OHS West:260492874.2